## SHUNK'S APPEAL.
## FREEDLEY'S APPEAL.

Two and a half per cent. commissions allowed on sale by assignees of real estate, the purchase money being about $44,000, of which $13,000 came into their hands, the residue continuing a lien, by agreement between a mortgagee and the purchaser.

In the distribution of an assigned estate, lien creditors let in pro rata with general creditors on the personal property: retaining their liens on the realty for the residue.

FROM the Common Pleas of Montgomery.

*March* 23.—The question here was on the distribution of an estate assigned for creditors generally. At the time of the assignment, there were several judgments and other liens on the real estate. The assignees declined to sell, being uncertain whether the purchase money would pay these liens and enable them to make title. The lien creditors agreed they should sell, reserving their right to the proceeds, which amounted to about $44,000. This was done; and by an arrangement some of the liens were allowed to remain, and credited as payments to the purchasers, so that but about $13000 was received by the assignees. The assignees claimed two and a half per cent. commission on the gross amount of the sales. The court awarded $800.

Krause, President J.—"The question whether this fund is to be treated simply as money, without regard to the nature of the estates from which it has been converted, or respect must be had, as in the distribution of decedents' estates, to the paramount rank which landed property holds above personal property—whether, in short, the chattels of the debtor must not first be exhausted in an effort to pay all his debts before a resort is had to his realty—remains to be answered. And the inquiry necessarily follows, whether the doctrines in equity, relative to marshalling assets and securities, furnish any analogy from which a rule applicable to the case may be deduced.

"Estates are held to be equitable assets in chancery, which are made subject to the payment of debts by the act of the debtor, and which, without his act, are not answerable for such purpose. The instrumentality of that court is necessary to their distribution; and this it always withholds from creditors who refuse to bring into hotchpot what they may have received out of legal assets, on the principle that equality is equity. But equity follows the law, and adopts the rules of the courts of law, wherever estates are made legal assets by statute; and then it enforces claims, charges, and antecedent liens *in rem* according to their priorities, whether or not those claims, charges, &c., or the assets, be legal or equitable, 1 Story Eq. 520, 524. Now, all the debtor's pro-

perty in Pennsylvania is a legal fund for the payment of demands upon him—his chattels are so at common law, and his lands are expressly made so by statute; in which case it is seen that equity follows the law. It is not perceived, therefore, that this principle in equity of enforcing equality in distributions is applicable here; nor that the other principle is applicable which seems to result from the doctrine of marshalling securities. It is true that wherever it can justly be done in this state, creditors are so placed by the courts as to restrain those who have a claim on two funds from taking away all the chance another may have on one of them, of obtaining satisfaction; but there is no principle which takes from a creditor any part of his security until he is completely satisfied. 19 Johns. Rep. 493. And consequently, if the lien creditors here have a right at all to come on the personal property, they have it without going into hotchpot, or surrendering part of their real estate securities. As between them and the other creditors, the principle of either marshalling assets or securities is inoperative, and can only be applied in the case of a contest for a surplus beyond the amount of encumbrances, between the assignor and creditors who are not secure by liens. Here, however, there is not a surplus but a deficiency.

"That the lien creditors have a right, *pari passu*, with the other creditors to come on the personal fund for a pro rata share, can scarcely be disputed. A mortgage is but a collateral security for the debt of the mortgagor on the original contract. The mortgagee is entitled to be paid out of the personal fund; Ram. on Assets and Debts, 356. And so of judgments; which, although they merge all minor securities, work no dissolution of the debt as a personal obligation. 'The debt is the same though the old evidence of it melts into the new one; the creditor, in obtaining a judgment, merely gets a higher security, without having an indivisible debt of different degrees.' 3 Watts & Serg. 278. And besides, in executing his judgment, he is forced by law upon the personal property of his debtor for satisfaction, before he can call on his real estate. The assignor is therefore still a debtor on the original contract, as well to his lien creditors as to other claimants; and it is in reference to the original contract that creditors, who are secured by liens, are, notwithstanding, entitled to be paid out of the personal fund, as far as it reaches in an apportionment. The assignee, moreover, having placed in his hands a personal fund sufficient, as it might turn out in some instances, to satisfy all the debts, would have to pay them all out of that fund without touching the land; and the 30th section of the act of 14th June, 1836, giving power to courts to compel conveyances by trustees, where the trust has been executed or

has 'expired, is a provision that shows such instances to have been contemplated by the legislature as sufficiently probable to call for its enactment. Is not, then, the question under consideration to be determined by the character which is impressed on real and personal estate by the common law, as modified in this state by statute, in connection with the order of appropriation to which they are relatively subjected when it becomes necessary to devote them to the payment of debts according to law? If this be so, the solution is an easy one; for the common law, not regarding real estate as a fund for the payment of debts, except the present profits, makes satisfaction of the creditor's demand out of the personal property alone. This was changed, it is true, by the early legislation, as by the articles agreed upon among the adventurers in England, and by the statute of 1682; but the act of 1700 restored the common law, so far, at least, as to postpone all attack on the realty, until it was shown by the return of a judicial writ, that the debtor's personal property was not enough to pay his debts on record. And, as if this feudal protection of land from sale had not yet been sufficiently reclaimed, the act of 1705 was passed, requiring first an appropriation of the personalty; next, the profits of the realty if in seven years they would pay the debts; and last of all the land itself. The land was not to be brought under the hammer until both the other resources had been shown to be inadequate. Except where land is specifically pledged, as by mortgage or mechanics' lien, such is now the law, and, it may be added, our settled policy. The conclusion is, that personal property is at law the primary fund for the payment of debts, and must in the first instance be appropriated to their payment, whether satisfaction of them be sought through the instrumentality of an execution, or 'the debtor's instrument for satisfaction,' as the Chief Justice calls the assignee, in 7 Watts & Serg. 375. It is the primary fund for this purpose both at law and in equity, 2 Sm. Chan. Prac. 252, 253; and Kent in his 4 Com. 420, says this is the general rule of the English and American law, even in payment of mortgages, which are merely collateral security for the personal obligation. The reason of the rule is given by Lord Eldon in 7 Ves. 334, viz.: 'the principle upon which the personal estate is first liable in general cases is, that the contract, primarily, is a personal contract, the personal estate receiving the benefit; and being primarily a personal contract, the land is bound only in aid of the personal obligation to fulfil the personal contract.' The exception is a class of cases in which the owner of land has not contracted the debt which the encumbrance on it was given to secure, nor made the debt his own by some decisive act; 9 Serg. & Rawle, 73; in such predicament the land is made to bear its own burden. In a case like

this, therefore, in which the assignor imposes no terms, prefers no creditors, expresses no special intent, but hands over an insufficient real and personal estate for distribution according to law, the court, it would seem, must base its orders and decrees on the principles stated, and consequently distribute the fund arising from personal effects pro rata among all the creditors, and thus ease the land pro tanto of its burden, whether the claims be secured by liens on the realty or not, no execution having been issued against the personal property. And this conclusion is fortified by the case of Adams v. Humes, 9 Watts, 305, which rules on authority, as well as reason, that sales by assignees are not of the interest of the assignor in the land, but his title as it is, encumbered or not as the case may be; that even to sales in bankruptcy, where the vendor seems to be the implement of the law much more than assignees in this state, the maxim of caveat emptor does not apply. It is said in that case, 'if the title is encumbered or defective, it is easy to offer it for what it will fetch as it stands,' and that 'every thing should be avoided in such sales which might lead to misconception.' The case finally decides that if the land be sold out and out as free from encumbrance, any charge upon it must be deducted from the price. How is the assignee to conduct a sale upon such principles, if the personal fund be not first distributed; for in no other way can the clear amount of liens on the lands be ascertained. On the other hand, each lien, having received its pro rata share out of the personal property, will be reduced to a certain amount by the mode of distribution indicated, and both assignees and bidders can act in reference to the sale, unembarrassed by any thing that may lead to misconception.

"To these considerations may be added another, arising from the right of the assignees, by the 29th section of the act of 1836, to commissions out of the effects in their hands. Two and a half per cent. for receipts and disbursements, and a just allowance for trouble besides, are said to be a proper allowance as a uniform measure ; 4 Whart. Rep. 104. A sale of real estate brings the proceeds into their account as effects in hand, and it is easy to see a strong temptation to make such sale, although not necessary, it may be, as to much or some of the assignor's land. The case in 7 Watts, 71, is an example of a surplus remaining in the hands of assignees, large enough to have saved a comfortable home for the family. A panic in their affairs, or other cause, has hurried men to the determination of making an assignment ; they made it, and a surplus was left for them, or they were dissuaded by a professional friend and surmounted their difficulties. In cases like these, the rule is a wholesome one which prevents a premature or unnecessary sale of the real estate, besides being one of benignity. And

the rule is not less so, which restrains the assignee from swelling his commission, and thus reducing the surplus, by selling more of the land than is needed to pay the debts and reasonable expenses, where a surplus may result, or reducing the fund for the creditors where a deficiency is apprehended. In this case, the sale was made with the concurrence of the encumbrancers; the assignees showed a commendable zeal for the interest of the creditors, and enlarged the fund by judicious management; and for that reason commission is allowed them on the whole amount charged in their account. But the case itself is an example of what facility there is of abusing the trust in this particular, if the rule insisted on for distribution be not applied, under the chancery jurisdiction to control trustees, which is given to the courts.

" The court therefore decrees that the auditor's report be re-committed to the auditor, with instructions,

" 1. To deduct from personal fund five per. cent. commissions for assignees.

" 2. Costs and expenses on personal property and one half expenses of court costs.

" 3. One half auditor's fees.

" 4. Taxes on real and personal property.

" Then distribute personal fund remaining, among all the creditors, both such as are secured by liens, and other securities, pro rata.

*As to Real Estate,*

" 1. Deduct from proceeds of sale $800 commissions.

" 2. One half auditor's fees, expenses and costs.

" 3. Then distribute according to priority of the several liens.

By the court."

The general creditors and the assignees appealed.

*Mulvany,* for the general creditors, appellants.—The lien creditors were precluded, by their agreement, from having any benefit out of the personal estate. But the court considered the whole constituted but one fund, and that all were equally entitled; the lien creditors retaining their preference on the proceeds of the real estate.

We contend we were injured by that agreement to the extent of the increased expenses incurred by it. The commissions claimed were $1100; and if the sheriff had sold, it would not have exceeded $300. Then there was the auditor's and counsel's fees, and the consequence is, these should be deducted from the amount they would be entitled to receive, not from our fund, for they were bound to go on and sell the land before they came on the personal estate, which was our sole fund. Hastings' case, 10 Watts, 304.

*Guillou*, contrà.—The auditor believed the sale by the assignees realized far more than would have been done by the sheriff—more than enough to pay all the expenses incurred, and left the personal estate free.

*Boyd*, for the trustees, appellants.—The assignees were entitled to two and a half per cent. commissions, 4 Whart. 104; even though they made such arrangements as did not disturb the liens ; the trouble was very great, and by this means a much higher bid was obtained. This allowance is the lowest rate, as was decided in the case referred to.    (The court intimated it was unnecessary to argue the point.)

PER CURIAM.—Nothing is plainer than that lien creditors may have recourse to the personal estate as the primary fund for their whole demand in the first instance, and subsequently to the land for the residue.   Why should they not do so here ?   Because it is said that the lien creditor last in the order of payment released his judgment in order to enable the trustees to make a title at private sale instead of pressing a sale by the sheriff, by which they affirm they may have been prejudiced.    But as the fact is stated by the auditor, and it stands uncontradicted by evidence, this creditor did not release the judgment, but only his lien on the land, which he might well do without releasing his debt.    That the sale by the trustees, instead of a sale by the sheriff, was prejudicial to the trustees, there is no proof, and the fact is not to be assumed.    The opinion of the court is entirely satisfactory as to the principles involved, and it is unnecessary to add to it.

There has evidently been a clerical mistake both by the court and the auditor.    The principle assumed, and it was the true one, would give the appellants $1100, yet they have a decree for no more than $800; and it is reversed so far as to correct the error.

It is ordered, therefore, that their commission be $1100 80, and that the residue of the decree be affirmed.