### Case No. 4,157.

In re DUNKERSON et al.

[4 Biss. 253; 12 N. B. R. 413.][1]

District Court, D. Indiana. Aug., 1868.

[For prior proceedings, see Case No. 4,156.]

Asa Iglehart, for the bank.

A. L. Robinson, for Lowrey & Co.

McDONALD, District Judge. This case is before me on a certificate of a register in bankruptcy under the 6th section of the bankrupt act.

To develop the matter to be decided, perhaps I cannot do better than to copy the substantial part of the register's certificate. He certifies that:—

"The Evansville National Bank presented to him in due form their deposition, accompanied by a statement in due form, showing that said bankrupts were indebted to said bank, as indorsers of sundry bills of exchange, in the sum of ninety-eight thousand six hundred and sixty-six dollars and sixty-six cents. Copies of the bills of exchange, upon which the liabilities of the bankrupts were founded, accompany the statement and deposition, and show that Watts, Crane & Co., and Watts, Given & Co., and Given, Watts & Co.—all of which firms are wholly disconnected with the bankrupts—are severally and respectively draw-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

ers, indorsers, and acceptors of these bills of exchange, upon all of which the bankrupts are the last indorsers. The vice-president of the bank, who makes the deposition, appends this statement: 'That said bank holds a claim against George R. Preston for four thousand five hundred dollars, due January 1, 1869, which was procured upon proceedings supplementary to execution upon a judgment obtained against William Brown (of Watts, Crane & Co.) one of the acceptors of the bills of exchange above set forth; that the claim is of the value of $———; that said bank also holds sundry notes secured by mortgage of which copies are hereto attached, marked B., and which were in May, 1867, the property of Watts, Crane & Co., and which were then given to R. K. Dunkerson of R. K. Dunkerson & Co. (who were the accommodation indorsers for said several firms who are the principal debtors to said bank upon the liabilities herein set out and proven), to indemnify said bankrupts against said indorsements, and also for the better security of the bank as well; that said collaterals were held by and for said bank more than six months before the bankruptcy; that the value of said collaterals is unknown to affiant. The debt claimed by said bank against said bankrupts is the whole amount of said bills irrespective of said claim against said Preston, and irrespective of said collaterals.' But W. J. Lowrey & Co., who are creditors of said bankrupts, and who had proven their claims in due form, objected to the proof of said claim for the full amount or for any amount, unless said bank would surrender said lien upon the claim against said Preston, and said collaterals, or have the same appraised and their value settled by the assignee, who had before that time been appointed, or have the same sold and the value thereof deducted from the amount shown to be due said bank, and the proof allowed for the balance, in accordance with the 20th section of the bankrupt act. But said bank wholly refused to have said claim and said collaterals sold in accordance with the provisions of said section, or to have the same appraised or the value thereof agreed upon in accordance with the provisions of said section, or to release or deliver the same up in accordance with the said provisions of said section; but claimed unconditionally the right to make proof of the whole amount due upon said bills of exchange, so indorsed by said bankrupts."

Upon this state of facts, it appears that the register allowed the entire claim of the bank against the estate of the bankrupts, to the sum of ninety-eight thousand six hundred and sixty-six dollars and sixty-six cents, and placed the same on the list of claims proved and allowed. Whereupon the parties agreed that the register should certify the whole matter to me for my decision

From the facts certified by the register,

I conclude that the only question for decision is the following: Is the bank bound to give up the collaterals named, or to make any arrangement concerning them, before being permitted to prove its whole debt of ninety-eight thousand six hundred and sixty-six dollars against the bankrupts Dunkerson & Company?

It would seem from the register's certificate that the creditors who insist on the affirmative of this question, do so on the sole ground that the 20th section of the bankrupt act requires it. And, as we are aware of no other provision of that act to which the question under consideration is applicable, we suppose that a proper construction of that section must be decisive of the question.

Before proceeding to consider the 20th section of the act, it may be well, however, to inquire what relevancy the note of four thousand five hundred dollars, held by the bank on George R. Preston, has to the merits of the present case. It appears that the bank had coerced that note from William Brown, one of the acceptors of said bills of exchange, and a partner in the firm of Watts, Crane & Co., by a proceeding supplementary to execution. But what connection the bankrupts or any of their creditors, except the bank, have with this note does not appear. The register's certificate, indeed, states that the proceeding supplementary to execution was upon a judgment against Brown, "one of the acceptors of the bills of exchange" on which the claim of the bank for ninety-eight thousand six hundred and sixty-six dollars is founded. But the certificate does not state that this judgment was rendered on Brown's acceptance of those bills; and I cannot presume that it was. I must, therefore, wholly disregard the note on Preston in deciding the question under consideration.

The matter, then, is reduced to this: Divers bills of exchange, amounting in the aggregate to ninety-eight thousand six hundred and sixty-six dollars, are drawn, accepted, and indorsed by several mercantile firms to procure accommodation in the bank. These firms apply to Dunkerson & Co., the bankrupts, for accommodation indorsements of them, and to the bank to discount them. Dunkerson & Co. and the bank ask some collateral security. It is given them by the delivery to the bank of "sundry notes secured by mortgage, and which, in May, 1867, were the property of Watts, Crane & Co., and Given, Watts & Co." Thereupon Dunkerson & Co. indorse the bills, and the bank discounts them. They are dishonored. Dunkerson & Co. become bankrupts. The bank offers to prove the bills as debts against them for dividends out of their assets. Certain creditors object, unless certain things proposed to be done under the 20th section of the bankrupt act are first performed. This seems to be the substance of the whole

matter. And it involves this question: When a creditor holds a debt against a bankrupt whose liability arises by his accommodation indorsement of bills of exchange, to secure the payment of which, the drawers and acceptors of the bills have delivered to the creditor "sundry notes," as collateral security, may the creditor prove his whole debt and have it allowed against the estate of the bankrupt without regard to these collaterals?

If this question should be answered in the affirmative, it must be because the provisions of the .20th section of the bankrupt act do not reach the case.

On a careful examination of that section, it will plainly appear that in its letter it does not comprehend the case under consideration. For, so far as it relates to mortgages, pledges, and liens at all, the letter of the section only includes "a mortgage or pledge of real estate or personal property of the bankrupt, or a lien thereon." Now, it is not pretended that the collaterals in question were ever property of the bankrupts, Dunkerson & Co. On the contrary, the register's certificate distinctly states that they were "the property of Watts, Crane & Co., and of Given, Watts & Co. Clearly, therefore, if we are strictly to construe the section according to its letter, it does not extend to the present case, and the register was right in passing the whole claim of the bank.

But it is a very grave question whether this section should be thus strictly construed. Rather, ought we not to construe it liberally and according to its spirit? There are plausible reasons for the latter construction.

In .the first place, it is the obvious policy of the bankrupt law to favor equity among bona fide creditors. Equitable principles pervade that law; and "equity loves equality." If we construe the 20th section of the act strictly and literally, we give the bank an advantage over the general creditors of the bankrupts; if liberally and according to its spirit, we may put them all on an equality. We are bound, therefore, if we can without violence to the language of this section, so to construe it as to extend its operation to the case at bar.

Moreover, if in this case instead of Dunkerson & Co., Watts, Crane & Co., who are the principal debtors on these bills, were the bankrupts, it would be very clear that the bank would not be allowed to prove for any part of its debt without first disposing of the collaterals as required by said 20th section. And, since the debt is one and the same, since Watts, Crane & Co. are the principal debtors, and Dunkerson & Co. but sureties for them, is it equitable that facts which would avail to prevent the proof and allowance of this debt as against the former company if they were bankrupts, cannot avail to the same purpose when the latter are bankrupts? As to principal and surety, it is a general rule that the surety may resist

payment on any ground which would be a good defense on the part of the principal.

Furthermore, the same reason which requires a creditor holding a lien for his debt on a bankrupt's property to dispose of that lien according to the 20th section of the act before proving his debt, equally applies where he holds the lien on the property of some other person. The only reason in both cases seems to be that it is not equitable to permit a creditor of the bankrupt holding collateral security for his debt first to prove the whole of it, and share equally with other creditors for the whole of it out of the common fund, and afterwards to resort to his collateral security to put him in a better condition than that of other creditors. The section in question virtually says to the lien-holder, "If you ask equity, you must do equity. Since your lien puts you in a better condition than other creditors, if you want a dividend out of the common fund, you must first deduct from your debt the value of your lien and take your dividend on the residue of your debt; or you must release your lien to the assignee and, thus putting yourself on a footing with other creditors, take the dividend on your whole debt; or, if the property on which you hold your lien is worth more than your debt, you may keep it in satisfaction thereof, and, instead of asking a dividend, pay the excess of its value into the common fund for the use of other creditors."

If we adopt this line of reasoning, we should conclude that the provisions of the 20th section of the act extend to the case at bar. And it must be confessed that such a conclusion is supported by several respectable authorities. Lanckton v. Wolcott, 6 Metc. [Mass.] 305; Amory v. Francis, 16 Mass. 308; Richardson v. Wyman, 4 Gray, 553.

But the conclusion to which this line of reasoning leads is attended with serious, if not insuperable, difficulties. Indeed, I think a construction of the section in question, founded on this reasoning, involves absurdities which cannot be tolerated. Some of these are as follows:

First. This section provides for a sale, in certain cases, of the property on which the lien attaches. Now, whether the property be personal or real, there is generally, in such cases, an equity of redemption. This exists in the person who is the general owner of the property. If he is the bankrupt, a sale of the property under the direction of the court would vest a good title in the buyer, because the holder of the equity of redemption is a party to the judicial proceeding. But if he who holds the equity of redemption is not the bankrupt, but a stranger, no such sale could vest his interest in the buyer. This remark applies only to a sale by agreement of the lien-holder and the assignee, authorized by said section.

Second. This section provides that, in certain cases, the lien-holder may retain the property at its value, and prove for the residue of his debt. This provision evidently contemplates the vesting of a perfect title to the property, including the equity of redemption, in the creditor. But this could not be done unless the property when the lien attached belonged to the bankrupt.

Third. The section under consideration provides that, if the value of the property on which the lien attaches exceeds the debt secured by it, the assignee may "release to the creditor the bankrupt's right of redemption therein on receiving such excess." Obviously this could not be done in the present case, though the collaterals exceeded in value the debt due to the bank. For, as these collaterals never belonged to the bankrupts, they never had any equity of redemption in them. Consequently, the assignee could not release these "bankrupts' right of redemption therein."

Fourth. This section provides that, in certain cases, the assignee shall "sell the property subject to the claim of the creditor thereon," and "shall execute all deeds and writings necessary or proper to consummate the transaction." This plainly means that he may sell and convey the equity of redemption. Clearly he has power to do this whenever the equity of redemption is in the bankrupt; for he officially represents the bankrupt's interest, or rather the bankrupt's interest is vested in him. But if the property on which the lien attaches never belonged to the bankrupt, he never had any equity of redemption in it, and so no such thing could vest in his assignee or be sold or conveyed by him.

These considerations, viewed in connection with the unequivocal language of the 20th section of the bankrupt act confining its provisions to mortgages and pledges "of real or personal property of the bankrupt or a lien thereon," lead me to the conclusion that no reasonable construction of the section can extend its provisions to liens of the creditors of a bankrupt on property of which he was never the owner.

In this conclusion, I am supported by high authority.

Under the English bankrupt law, which does not differ much from our own on the points relating to the question under consideration, the rulings of the judges will be found to agree with the conclusion to which I have come in this case. See Ex parte Bennet, 2 Atk. 527; Ex parte Parr, 18 Ves. 65; Ex parte Goodman, 3 Mad. Ch. 373; Ex parte Plummer, 1 Atk. 103.

My ruling in this case is also in conformity with a decision of Mr. Justice Story under the bankrupt law of 1841 [5 Stat. 440], in the Case of Babcock [Case No. 696]. That case was very much like the present; and the learned judge held that a distinction must be taken between the case of a security given to the creditor by the bankrupt himself of his own property, and the case of a security of a third person transferred to the creditor

by the bankrupt, or otherwise. And he decided that "in the former case, the creditor is not allowed to prove his debt against the bankrupt, unless he surrenders up the security, or it is sold with his consent, and then he may prove for the residue of his debt which the security when sold does not discharge. In the latter case, he may prove his debt in bankruptcy without surrendering the security of the third person which he holds, and may, notwithstanding such proof, proceed to enforce his security against such third person, provided, however, he does not take, under the bankruptcy and the security, more than the full amount of his debt." In my judgment, precisely so may the Evansville National Bank do in the case at bar.

I am gratified to find that, in the conclusion to which I have come in the present case, I am fully sustained by a late decision of Judge Fox of the district of Maine, in the matter of Nathaniel O. Cram [Case No. 3,343], made under the present bankrupt law. That case was almost in every respect like the present. The Casco National Bank presented a claim against the estate of Cram, the bankrupt, on notes for eighty thousand nine hundred dollars, executed by a manufacturing company and indorsed by Cram. These notes were secured by mortgages on personal and real estate executed by the manufacturing company to the bank. It was objected that proof of the debt in favor of the bank could not be allowed without first deducting the security held by it. And this objection was made, as in the present case, under the provisions of the 20th section of the bankrupt act. But the learned district judge, in an elaborate and exceedingly well-reasoned opinion, overruled the objection and ordered the proof to be taken. I entirely approve his reasoning and his decision.

The doings of the register, Charles H. Butterfield, Esq., in the premises are approved and affirmed, which is ordered to be certified, &c.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[For prior proceedings, see Cases Nos. 4,156 and 4,157.]