[S. F. No. 1304. In Bank.—June 19, 1903.]

In the Matter of the Estate of LEVIN BROTHERS, In-
solvents. ANGLO-CALIFORNIAN BANK, Appellant,
v. J. LEVIN, Jr., Assignee in Insolvency, et al., Respond-
ents.

INSOLVENT LAW—PARTNERSHIP—CLAIMS OF CREDITOR—MORTGAGE ON
HOMESTEAD OF ONE PARTNER—RIGHT TO DIVIDENDS.—A creditor of
an insolvent partnership has a right to dividends out of the part-
nership assets upon the full amount of the proven claim against the
partnership, without any deduction on account of a mortgage held
by such creditor on a homestead of one of the copartners, which
such creditor may exhaust by foreclosure, after receiving full divi-
dends from the assets of the firm, where it is conceded that the
creditor's demand will not thereby be paid in full. [McFarland, J.,
Angellotti, J., and Van Dyke, J., dissenting.]

ID.—LIEN UPON EXEMPT PROPERTY.—A lien upon exempt property which
did not pass to the assignee is in the position of a lien upon the
property of third persons, which the holder could not be required
to surrender to the assignee before receiving dividends from the
partnership as a creditor thereof. [McFarland, J., Angellotti, J.,
and Van Dyke, J., dissenting.]

APPEAL from a decree of the Superior Court of the City
and County of San Francisco settling the final account of an
assignee in insolvency. Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

Jesse W. Lilienthal, for Appellant.

Joseph Kirk, and Walter D. Mansfield, for Respondents.

LORIGAN, J.—On the previous submission of this case in Bank an opinion was prepared by the late Justice Temple, signed by a requisite number of concurring justices, and filed. It appearing, however, that such opinion was not signed by the requisite number of justices who had heard the oral argument in the case, and no stipulation having been entered into that any of the justices not hearing such oral argument might participate in the decision, and the attention of the court having been directed to that fact, the opinion so filed was withdrawn.

That opinion was as follows:—

"The above-named firm, composed of Isidor Levin, Julius Levin, and David Levin, were adjudged insolvents, January 7, 1897, as were also the individual members of the firm. It does not appear that there were any individual creditors.

"The Anglo-Californian Bank, appellant here, holds a mortgage to secure its indebtedness upon the homestead of Isidor Levin, one of the copartners. Appellant's allowed claim amounts to $33,500, and the value of the homestead is $6,000. The homestead is the individual property of Isidor Levin, and was his domicile, but was set apart as a homestead in the proceedings in insolvency, not having been previously a statutory homestead.

"In the decree, settling the final account of the assignee, the court held that the bank should first deduct from its proven debt the value of the homestead, and should be allowed dividends only on the residue of its claim. From that portion of the decree such creditor appeals.

"The appellant contends that it has a right to dividends upon the full amount of its proven claim, without regard to the security which it holds upon the homestead of the individual partner, which it may exhaust after receiving full dividends from the assets of the firm. It is conceded that, even in such a case, its demand will not be paid in full. Both sides rely with apparent confidence upon the words of the statute. As a guide to its interpretation, we are referred to

the rule of equity, and to that laid down in the Civil Code applicable to the case, where one creditor is able to reach a fund which the others cannot. There are two sections in our Civil Code in relation to this matter. Section 2899 relates to liens, where one creditor has a lien on several things, and other creditors have subordinate liens on some but not upon all of these things; the person having the prior lien may be compelled to resort first to the exclusive security held by him, 'when he can do so without risk or loss to himself, or of injustice to other persons.' Section 3433 states the general equitable principle, and its application is also expressly limited to cases where the doubly secured creditor can have complete payment of his debt, from the funds to which he may alone resort. Otherwise, he may share equally with the general creditors in the common fund, to the extent necessary to his payment in full. These rules, however, prevailed only in cases where assets were marshaled by courts of equity, in cases of actual insolvency, as, for instance, of insolvent partnerships, corporations, and the like. The bankrupt laws, both in England and the United States, have always treated the secured creditor less favorably than courts of equity did. In equity the rule has been, that a creditor who is secured upon assets of the debtor himself, may prove his entire demand and receive his full dividends, and then resort to his securities, provided he only gets full payment. Under the bankruptcy laws, both here and in England, the rule has always been, that in such a case, he could not get dividends upon his full demand without surrendering his securities.

"The difference between the practice in equity and in bankruptcy was elaborately discussed in *People* v. *Remington,* 121 N. Y. 328; also, Story's Equity, sec. 640; *Greenwood* v. *Taylor,* 1 R. & M. 185; *Merrill* v. *National Bank,* 173 U. S. 134. In these cases it is said that to refuse to a secured creditor the right to prove his full demand against the insolvent estate without deducting his security, when the result would be that he would not be fully paid, would be to deprive him in part of his security. Before the insolvency he had a right to collect what he could, first from the general assets of his debtor, and then to realize upon his securities. The insolvency did not change his contract rights, but the proceeding was a mode of

enforcing them. The difference between the result of the equity rule, and the bankruptcy rule, is illustrated by an instance suggested in the case from the supreme court of the United States. A creditor has a debt of $10,000, secured by a lien upon property belonging to his debtor, worth $5,000. The insolvent estate will pay fifty cents on the dollar. The rule in equity would allow the creditor to prove his whole demand against the insolvent estate, from which he would get $5,000, which with his security would pay his demand in full. In the bankruptcy proceedings, he could have proved only for the difference between the value of his security and his debt, which would have been $5,000, and he would have been paid from the insolvent estate only $2,500, losing a like amount of his claim. The appeal to the rule in equity, therefore, as to the marshaling of assets in cases of insolvency cannot help the respondent.

''The rule in bankruptcy proceedings, however, as already stated, has always been that a creditor having security upon the goods of his debtor, which, but for his lien, would have gone to swell the amount to be divided among the creditors, must, before he can prove his claim, either surrender his security to be administered in the proceeding for the benefit of the creditors, or prove only for the balance after deducting the value of his security. Upon this point, all bankrupt and insolvency proceedings have been similar from the time of the first English Bankrupt Act (34 Henry VIII) ; but it has always been held that the creditor is not required to make a deduction, but may prove his whole claim, although he has security given by third parties, or upon the separate estate of one of the partners. (Story on Partnership, sec. 389, and authorities cited in note.) This last proposition is universally recognized in this country and in England, with the exception of a single case in Tennessee and some cases in Massachusetts, which the high reputation of that court, and the indorsement of Chief Justice Shaw, failed to make current elsewhere, and which, I believe, are now repudiated, even in Massachusetts.

''But respondent's counsel contends, that since it does not appear that there were individual creditors, the question is to be regarded as though the assets of the partnership and of the individual partners, were being administered together. Ap-

pellant had a right to participate in the partnership assets to the full amount of his debt. If it were true that before he could participate in the individual assets of one of the partners, he would be required to give up security which he held upon property, which, but for his lien, would increase that estate, how that fact could affect his right to partnership assets I cannot understand. The right to a ratable share of the partnership recoveries is his property, of which he cannot be thus deprived. And the equities are all in favor of the doubly secured creditor. The partners are entitled to demand that the partnership funds shall be first applied to the payment of partnership debts before the estate of the individual partner is resorted to. Regarded as the grantee of the estate of the individual partner, upon which he has security, the doubly secured creditor now has that equity. Why not? If he were the purchaser, no one would dispute that proposition. Is it not as obvious when he takes a conveyance by way of security? The mortgage was executed three years before the insolvency, but recorded just before. Counsel say it was to enable the appellant to make the points urged by him here. If the transaction was not in fraud of the Insolvency Act, and assailable on that ground, or for any other reason, it was a proper motive, but one with which, proper or improper, we have no concern.

"This question has been settled in favor of appellant in the bankruptcy courts of the United States. As far as affects this question, the National Bankruptcy Act is identical with our insolvent law. *In re Thomas & Sivyer,* 17 Nat. Bank Reg. 54, Fed. Cas. No. 13886, the matter was elaborately considered, in a case in all essential respects the counterpart of this, and it was held that the fact that there was no individual indebtedness of the partners could make no difference, and did not change the rule that a creditor of the partnership could receive dividends from the partnership recoveries, although he was in part secured by a mortgage upon the property of one partner. And it could make no difference whether there were individual creditors or not, if the individual estates were sufficient to pay them. Such a question would never be of interest to partnership creditors, except where there was a surplus after satisfying the claims of the individual creditors.

"The language of the act itself calls for this construction.

All admit that the partnership and individual estates, though having a common assignee, are administered as separate estates. Section 39 speaks of the creditors of the firm, and of the creditors of the individual partners. Of course, the debtor of the firm creditors must be the firm, and the debtor of the creditors of the individual partners must be the individual partners. The only case under the law where a creditor cannot prove his entire debt is where he has a mortgage, pledge, or lien on the property of his debtor. The debtor of appellant is the partnership upon whose property he has no lien.

· "For still another reason the contention of the respondent must be overruled. The lien in question is upon exempt property which did not pass.to the assignee. It is in the precise position of a lien upon property of third persons. The lien has not diminished the amount to be distributed to the general creditors, and its release would not add to that fund. Under any view, all the creditor would have to do to entitle him to prove his entire demand against the partnership assets would be to release his security, and to do this would not benefit the other creditors. They are therefore not interested in the fact that he has such an advantage. The only purpose of the rule is, that a fair and equal distribution may be made of the estate being administered by the court. The retention of the security does not prevent an equal distribution of that estate. Its surrender would not add to it, but to deny to appellant a dividend upon his full demand would make the distribution unequal as to him. As said by Bump on Bankruptcy, 11th ed., p. 496: 'Every line of the law relating to this matter points most distinctly and directly to property of the bankrupt, and only to property of the bankrupt, with which the district court in bankruptcy can deal.'

"In the following cases a cognate question is elaborately considered, and the argument is applicable here: *In re Dunkerson & Co.*, 4 Biss. 253; *In re Cram*, 1 Haskell, 89.''

Upon this present submission we are satisfied with the reasons and conclusions reached by the late justice, as embodied in the foregoing opinion, and adopt it as the prevailing opinion of the court.

It is therefore ordered that the portion of the order appealed from be reversed, the cause remanded, and the court directed

to enter a new order in accordance with the views above expressed and herein adopted.

Beatty, C. J., and Henshaw, J., concurred.

SHAW, J., concurring.—I concur in the opinion prepared by the late Mr. Justice Temple while he was a member of this court. I add some observations which, to my mind, make the conclusion clearer and more satisfactory.

It is correctly stated in the opinions above referred to that in insolvency or bankruptcy proceedings a partnership creditor who has security upon the separate property of one member of the firm which has been transferred to a third person, or security upon the property of a third person, or security on property still owned by one of the firm, is not required to make a deduction, but may prove his whole claim against the partnership assets. In the case of security on the property of a third person, or upon property which has been transferred to a third person, the reason for this rule is, that unsecured partnership creditors suffer no loss by this method of marshaling the assets. For, if the third person were compelled to pay the secured debt to the value of the property mortgaged, he would be to that extent a creditor of the partnership, and could prove his claim and participate in the distribution. And before payment he would be in the position of a surety for the partnership, and as such could have the claim proved and allowed as a general claim under section 45 of the Insolvency Act. (Stats. 1895, p. 146.) The amount of the dividend in either case would therefore be the same as if the creditor had been allowed to prove for the whole claim in the first instance. In the case where the security is upon the property of one member of the firm, the reason is not precisely the same. In that event, if the debt has been paid by the member of the firm out of his separate estate, he will stand as a creditor of the firm to the amount thus advanced for its benefit, but he cannot be allowed to participate in the distribution of the firm assets, to the detriment of firm creditors, because he too is liable for those debts if the firm assets are not sufficient to pay them, and if, as here, there are no individual creditors, it would be merely traveling in a circle

to allow him to receive money from the firm assets in payment of such claim, and immediately take the money again to satisfy the unpaid debts of the firm. But if there had been no payment by the member who is surety, and the debt still stands to its full amount as the debt of the firm, it is settled by the authorities cited, and the reasons given in the opinion of Justice Temple, that he has the right to have it regarded to its full amount as a debt of the firm, as in law it still continues to be, and to have it go in without diminution as a part of the aggregate of claims upon which the dividend is to be computed and paid out of the firm assets, and that the creditor has the same right. And this rule stands upon even better grounds where the individual property given as security is exempt from the payment of debts in the insolvency proceedings, by reason of its being a homestead. For, as is said by Justice Temple, the giving of the security upon the homestead takes nothing from the assets available to the general creditors, either of the firm or of the individual member.

Upon reargument, respondent contends that it is not a correct construction of the Insolvency Law to declare that the failure to release the lien where it is upon exempt property takes nothing from the fund available to general creditors; that it is not true that in any event that property could not be reached by them. In support of this contention it is said that section 48 of the act requires the secured creditor, as a condition upon which he is allowed to prove for the whole amount of the debt, to "release or convey to the assignee" his claim, and that the proper construction of this provision is, that the creditor must release or convey to the assignee, not to the person whose property is given as security. Hence it is argued that the assignee, upon receiving the mortgage or security, may collect it and apply it to the payment of unsecured creditors, and it would follow that if the release or conveyance is not thus made, and the secured creditor proves for his whole debt, the assets for the general creditors will be diminished by the amount of the security. This contention is fully answered by the point established in the main opinion, that the secured creditor is required to make such release or conveyance only when the lien he holds is "upon the property of the debtor," meaning, of course, the insolvent debtor, and

that, with respect to the partnership assets in a partnership insolvency proceeding, the partnership is the debtor, and not individual members of the firm, and that, consequently, in this case the creditor did not have any lien or security upon the "property of the debtor" to release or convey.

McFARLAND, J., dissenting.—I am not able to concur in the judgment. I think that under the provisions of our Insolvent Law the value of appellant's mortgage was properly deducted from its claim for dividends. In my opinion, where several persons acting together as partners commence voluntary proceedings in insolvency, each of them is a "debtor" within the meaning of section 48 of the statute, and that, within its meaning, property mortgaged by either to secure partnership debts is "property of the debtor." In case of persons who are partners applying for a discharge in insolvency, who are the petitioners, and who are the debtors? Clearly the natural persons who are associated as partners. A partnership is really not a legal entity. It is not a "person"; and the use of the partnership name is of no value except as it represents natural persons. This is recognized by the Insolvent Law; for its provision on the subject is, that "*two or more persons* who are partners . . . may be adjudicated insolvent," either upon their own petition or upon that of creditors (Stats. 1895, p. 144, sec. 39) ; and the section further provides that all the joint property "and also all of the separate property of each of the partners shall be taken." Of course, there is a difference between the joint and individual obligations of partners, and the statute reserves this distinction, so far as it is necessary, by providing that separate accounts shall be kept of the two kinds of obligations, and that, if there be creditors of an individual partner, they shall be satisfied out of the separate property of such partner. But it is provided that, "If there be any balance of the separate estate of any partner after the payment of his separate debts, such balance shall be added to the joint stock for the payment of the joint creditors," and there is a similar provision that such a balance of joint property shall go to the payment of separate debts. It seems to me, therefore, that the statute clearly contemplates that each partner is a "debtor," and that all

the property of the partners is "property of the debtor" within its meaning. In the case at bar there were no debts of the partner who executed the mortgage, and therefore no questions arise as to conflicting rights of joint and several creditors. In such cases the separate property of a partner is "added to the joint stock for the payment of the joint creditors." This view seems to me to follow from the very nature of the insolvent proceeding when applied to partners; for the natural persons associated together as partners are those who are discharged from their debts—not the "partnership," which is a mere name having no legal entity distinct from the persons who use that name.

I do not think that the fact that the mortgaged premises were by the court set apart to the debtor as a homestead changes the aspect of the question. The property was still the property of the debtor, and the statute makes no distinction in this regard between property exempt from execution and that not exempt. The statement in the majority opinion, that the release by appellant of its security would not add to the fund available to partnership creditors, is, I think, unwarranted. Section 44 of the Insolvent Act (Stats. 1895, p. 145) provides that the release or conveyance of the claim must be to the assignee, not to the debtor. Under the terms of that section appellant, before being allowed to prove his whole debt, must either deduct the value of the property held by it as security, or convey its claim to the assignee, and in either event the fund available to partnership creditors would be increased by six thousand dollars—the admitted value of the property held as security. As the facts appear in the transcript, the debt of the appellant was reduced to the extent of six thousand dollars; and it is substantially in the same position that it would have occupied if the six thousand dollars had been actually paid it in cash. I think, therefore, that the order appealed from should be affirmed.

Angellotti, J., concurred with McFarland, J.

VAN DYKE, J.—I concur in the foregoing opinion of Mr. Justice McFarland, for the reasons therein stated, and also upon the grounds specified in the opinion as filed in Department One.

The following is the opinion of Department One above referred to, filed on the 31st of December, 1900:—

VAN DYKE, J.—Voluntary proceedings in insolvency were commenced herein on January 7, 1897, and said firm and the individual members thereof adjudged to be insolvent. Prior thereto,—to-wit, April 20, 1893,—the Anglo-Californian Bank, Limited, procured from Isidor Levin and his wife, to secure to it the payment of all sums due or to become due from said Levin Brothers, a mortgage on a piece of property owned by said Isidor Levin, individually, and occupied by him and his wife as a domicile; but no declaration of homestead had been filed prior to the commencement of the proceedings in insolvency. Under section 64 of the Insolvent Law of 1895, the court in such insolvency proceeding, on March 24, 1897, set apart to said Isidor Levin the property so mortgaged, as a homestead. The said mortgage which was so held by said bank is of the value of six thousand dollars, and in the settlement of the final account of the assignee in said insolvency proceedings the court below held that the amount of said mortgage security should be deducted from the claim of said bank. From this portion of the order settling the said final account the bank appeals. The mortgage held by the appellant was not displaced by the homestead, but is superior and paramount thereto. Further, it appears there are no separate creditors of any of the members of said partnership firm. The claims of one hundred and eighty-two creditors are approved, ranging in amount from a few dollars to over twenty-seven thousand dollars—the largest being the claim of said appellant, after deducting six thousand dollars covered by its security. The net amount to be distributed among these numerous creditors was only $21,714.82.

Section 48 of the Insolvency Act provides: "When a creditor has a mortgage or pledge of real or personal property of the debtor, or a lien thereon, for securing the payment of a debt owing to him from the debtor, he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property," etc. (Stats. 1895, p. 146.)

It is also provided by section 39 of the same act that the assignee shall keep separate accounts of the joint stock or property of the copartnership, and the separate estate of each

member thereof, and the net proceeds of the joint stock shall be appropriated to pay the creditors of the copartnership, and the net proceeds of the separate property of each partner shall be appropriated to his separate creditors; and if there shall be any balance of the separate estate of any partner, after the payment of his separate debts, such balance shall be added to the joint stock for the payment of the joint creditors.

It is contended on the part of the appellant that the security held by it is no part of the assets of the partnership, "the debtor," and that such security was upon property excluded from the jurisdiction of the insolvency court. But in section 66 of the Insolvency Law it is expressly provided that "words used in this act in the singular include the plural, and in the plural the singular, and the word 'debtor' includes partnerships and corporations." The individual members, as well as the partnership, are before the court in the insolvency proceeding, and subject to its jurisdiction. "Each partner owes all the debts of the partnership, and his goods may be taken to pay them." (*In re Straut*, 125 Cal. 417.) The general purpose and policy of the law is to produce equality, as far as possible, among the creditors of the insolvent debtors; and in the marshaling of assets to bring about this result our Civil Code lays down the following rule: "Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons." (Civ. Code., sec. 3433. See, also, sec. 2899.) This declaration of our code represents an old-established principle of jurisprudence in reference to marshaling of assets. In *Kent* v. *Williams*, 114 Cal. 541, it is said: "The doctrine of the marshaling of assets, under which, if one creditor has a lien on only one of them, the former must first proceed against that upon which the latter has no lien, is not only fully established by general authority, but is also expressly declared in sections 2899 and 3433 of the Civil Code."

We are of opinion that the court below correctly held that

the amount of security in question should first be deducted from appellant's claim, and that it should be allowed to participate in the distribution only upon the balance of such claim.

Whatever may have been held to the contrary in other jurisdictions in reference to such proceedings, the statute provisions and our own decisions thereunder must control here.

Rehearing denied.