STATE EX REL. RANKIN, ATTORNEY GENERAL, PLAINTIFF, *v.* YELLOWSTONE BANK & TRUST COMPANY OF SIDNEY, DEFENDANT.

WAR FINANCE CORPORATION, APPELLANT, *v.* YELLOWSTONE VALLEY BANK & TRUST COMPANY OF SIDNEY ET AL., RESPONDENTS.

(No. 5,757.)

(Submitted November 20, 1925.  Decided December 9, 1925.)

[243 Pac. 813.]

*Banks and Banking—Insolvency—Secured Creditors—Distribution of Dividends—Rule.*

1. In the absence of statute regulating the manner in ·which a secured creditor of an insolvent state bank shall share in its general assets, *held,* that the rule prescribed by the Revised Codes for the computation of dividends from the general assets of the estate of a deceased insolvent must control, to-wit: that the basis for computing dividends is the amount due the secured creditor,—after deducting any amounts he may have received from his security subsequent to the closing of the bank,—at the time he presents his claim, and not the balance due at the time any particular dividend is distributed.

[1] Banks and Banking, 7 C. J., sec. 545, p. 750, n. 62.

*Appeal from District Court, Richland County; Frank P. Leiper, Judge.*

ACTION by the State of Montana, on the relation of Wellington D. Rankin, Attorney General, against the Yellowstone

Valley Bank & Trust Company of Sidney to wind up the affairs of the bank. From an order refusing the claim of War Finance Corporation, a secured creditor, until certain conditions had been complied with, it appeals. Reversed and remanded.

*Messrs. Stewart & Brown,* for Appellant, submitted a brief; *Mr. John G. Brown* argued the cause orally.

*Mr. L. V. Ketter,* for C. L. Teisinger, Receiver of Respondent Bank, submitted a brief and argued the cause orally.

(Note: The cases cited by counsel are substantially all incorporated in the opinion and it is therefore deemed unnecessary to insert them here.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On March 22, 1922, the Yellowstone Valley Bank & Trust Company, a domestic corporation, failed in business and was closed by the state superintendent of banks and, in October following, was placed in the hands of a receiver appointed to wind up its affairs.

At the time it failed, the bank was indebted to its depositors whose claims were not secured, and it was indebted also to the War Finance Corporation (hereinafter called the corporation) to the extent of $125,653.83 for borrowed money, which claim was secured by a pledge of sundry promissory notes, executed by individuals who had borrowed from the bank. Immediately after the bank failed, the corporation collected approximately $27,000 from these pledged notes, and in January, 1923, presented its claim for $99,376.19, the balance then due, but before the claim was acted upon it was amended so as to demand the full amount due at the time the bank failed. After the claim was presented but before any dividend was

declared, the corporation collected from the pledged security the further sum of $27,000 in round numbers.

Claims of unsecured creditors aggregating about $280,000 were presented and approved, and in April, 1924, a dividend of twenty per cent was ordered and was distributed to those holding approved claims, but at that time the claim of the corporation had not been passed upon—neither allowed nor disallowed.

On March 20, 1925, the court in which the receivership proceeding was pending entered an order refusing to allow the claim of the corporation unless and until it either surrendered to the receiver the collateral held by it, or exhausted the security and applied the proceeds in reduction of the amount of its claim. If the latter alternative were chosen, the court indicated that the claim would then be allowed for the balance and the same dividends paid thereon from the general assets, as had been paid or should be paid upon other claims. From that order the corporation appealed and now insists that it should be paid dividends computed upon the amount due to it at the time the bank failed, without reference to the amounts collected from its security, either before or after it presented its claims.

The question for determination is: Upon what basis should the corporation share in the distribution of the general assets of the failed bank?

A like question has been before the courts of this country repeatedly during more than a century, arising out of voluntary assignments, the administration of estates of deceased insolvents or winding up proceedings. Speaking generally, the question arises under one of three sets of circumstances:

(a) Where the secured creditor has not collected anything from his security.

(b) Where, after the insolvency has occurred, but before he presents his claim, he realizes a part of the amount of his claim, from the collateral held by him.

(c) Where, after he presents his claim, but before a dividend is paid, he collects a part of the amount of his claim, from his security.

Differences in the language employed in deeds of assignments, the influence of local statutory provisions, and different theories of the law applicable, have led to particular differences in judicial decisions and to some confusion.

The trial court adopted the bankruptcy rule, so called because it has been applied in bankruptcy generally and is the rule prescribed by our National Bankruptcy Act (30 Stats. at Large, 544 [U. S. Comp. Stats., secs. 9585–9656]), though the courts are unable to agree as to the origin of the rule. It was invoked in this country first in 1820 (*Amory* v. *Francis,* 16 Mass. 308) and has been followed in Iowa (*Wurtz* v. *Hart,* 13 Iowa, 515, *Doolittle* v. *Smith,* 104 Iowa, 403, 73 N. W. 867), in Washington (*In re Frasch,* 5 Wash. 344, 31 Pac. 755; *First Nat. Bank* v. *Bank,* 127 Wash. 475, 221 Pac. 595), in Kansas (*Bank of Kansas City* v. *Branch,* 57 Kan. 27, 45 Pac. 88; *Investment Co.* v. *Richmond Nat. Bank,* 58 Kan. 414, 49 Pac. 521; *Bank* v. *State,* 8 Kan. App. 468, 54 Pac. 510), in Mississippi (*Bank* v. *Duncan,* 84 Miss. 467, 36 South. 690), and in Georgia (*Citizens' & Southern Bank* v. *Alexander,* 147 Ga. 74, L. R. A. 1918B, 1021, 92 S. E. 868). It was approved by the dissenting Justices in *Merrill* v. *Nat. Bank,* 173 U. S. 131, 43 L. Ed. 640, 19 Sup. Ct. Rep. 360, and in effect has been reduced to statutory form in Idaho (*Blackman* v. *Pettengill,* 25 Idaho, 307, 137 Pac. 182), in Minnesota (*Swift* v. *Fletcher,* 6 Minn. 550 [Gil. 386]), and in New Hampshire (*Bank Commissioners* v. *Security Trust Co.,* 70 N. H. 536, 49 Atl. 113). Statutes, somewhat similar, though of more restricted application, prevail in California (*In re Levin,* 139 Cal. 360, 63 Pac. 335, 73 Pac. 159), and in New Jersey (*State Bank* v. *Receivers,* 3 N. J. Eq. 266; *Butler* v. *Tobacco Co.,* 74 N. J. Eq. 423, 70 Atl. 319).

This rule proceeds upon the theory that the amount of the secured creditor's claim against the general assets of the in-

solvent estate cannot be determined until he either surrenders his security or converts it into cash and applies the proceeds toward the discharge of his claim. It denies to the secured creditor, as such, the right to participate in the distribution of the general assets. If he surrenders his security, he participates as an unsecured · creditor, and if he converts his security into money and applies the proceeds upon his claim, he participates only upon the basis of the remainder and as an unsecured creditor. In so far as the rule requires the secured creditor to surrender his security, it robs him of the benefit of the contract under which he obtained the security and deprives him of the fruits of his prudence and foresight. In so far as it requires him to convert his security into cash and apply the proceeds to his claim before he is permitted to receive a dividend from the general assets of the estate, it is impracticable of application in this case. The corporation cannot sell the notes which it holds as collateral. Section 8312, Revised Codes, declares: "A pledgee cannot sell any evidence of debt pledged to him, except the obligations of governments, states, or corporations; but he may collect the same when due."

If that rule be applied in this case, the corporation must either surrender the advantage it gained by obtaining security for its debt, or it must wait for a dividend from the general assets until, if ever, it collects every one of the ninety-two pledged notes which it held at the time the bank failed.

This is not a proceeding in bankruptcy, and we are not disposed to adopt the rule which is opposed by the great weight of authority and, in our opinion, by the better reasoning.

The other courts which have considered the question, all concede to the secured creditor, as such, the right to participate in the distribution of the general assets of the insolvent estate, but they do not agree as to the basis upon which his dividends should be computed.

Many of the courts follow the rule which authorizes the secured creditor to receive dividends computed upon the amount

due to him at the time his debtor's insolvency occurs, without deducting any amounts which he may have realized from his security after that date, provided only that the dividends received and the amounts realized from his security shall not exceed the amount of his claim. This rule is frequently referred to as the English chancery rule, though, in that form, it was never enforced in England at any time. It was adopted in this country in Connecticut in 1817 (*Findlay* v. *Hosmer,* 2 Conn. 350), and has been adhered to in Delaware (*Mark* v. *Brick Mfg. Co.,* 10 Del. Ch. 58, 84 Atl. 887), Kentucky (*Logan* v. *Anderson,* 18 B. Mon. (Ky.), 114; *Hibler* v. *Davis,* 13 Bush, 20; *Citizens' Bank* v. *Patterson,* 78 Ky. 291), Michigan (*Third Nat. Bank* v. *Haug,* 82 Mich. 607, 11 L. R. A. 327, 47 N. W. 33; *In re Bement's Sons,* 150 Mich. 530, 114 N. W. 327), New York (*People* v. *Remington,* 121 N. Y. 328, 8 L. R. A. 458, 24 N. E. 793), North Carolina (*Brown* v. *Merchants' & Farmers' Nat. Bank,* 79 N. C. 244; *Winston* v. *Biggs,* 117 N. C. 206, 23 S. E. 316; *Merchants' Nat. Bank* v. *Flippen,* 156 N. C. 334, 74 S. E. 100), Oregon (*Kellogg* v. *Miller,* 22 Or. 406, 29 Am. St. Rep. 618, 30 Pac. 229), Pennsylvania (*Skunk's Appeal,* 2 Pa. 304; *Miller's Appeal,* 35 Pa. 481; *Boyer's Appeal,* 163 Pa. 143, 29 Atl. 1001), Rhode Island (*Allen* v. *Danielson,* 15 R. I. 480, 8 Atl. 705, overruling *In re Knowles,* 13 R. I. 90; *Greene* v. *Jackson Bank,* 18 R. I. 779, 30 Atl. 963; *In re Burke,* 25 R. I. 302, 55 Atl. 825), Tennessee (*Bank Cases,* 92 Tenn. 437, 21 S. W. 1070), Vermont (*West* v. *Bank,* 19 Vt. 403), Virginia (*Bank* v. *Trigg Co.,* 106 Va. 327, 56 S. E. 158), West Virginia (*Williams* v. *Overholt,* 46 W. Va. 339, 33 S. E. 226; *Price* v. *Hosterman,* 70 W. Va. 12, 73 S. E. 55), and Wisconsin (*Harrigan* v. *Gilchrist,* 121 Wis. 127, 99 N. W. 909; *Corbett* v. *Joannes,* 125 Wis. 370, 104 N. W. 69). It has been enforced generally by the federal courts since the decision in *Chemical Nat. Bank* v. *Armstrong,* 59 Fed. 372, 28 L. R. A. 231, 8 C. C. A. 155, and was adopted by the majority of the United States supreme court in *Merrill* v. *Bank,* 173 U. S. 131, 43 L. Ed. 640, 19 Sup. Ct. Rep. 360, and reaf-

firmed in *Aldrich* v. *Bank,* 176 U. S. 618, 44 L. Ed. 611, 20 Sup. Ct. Rep. 498.

The fundamental principle which underlies this rule is that immediately upon insolvency occurring, all of the creditors of the insolvent become joint proprietors of the sequestered property, each one owning such a proportional part of the whole as the debt then due to him bears to the aggregate amount of the debts, and that each one participates in the distribution of the estate, not as a creditor, but as an owner. This was the doctrine announced in *Miller's Appeal,* 35 Pa. 481, and approved by the supreme court of the United States in *Merrill* v. *Bank,* above. Because that is the foundation upon which the rule rests, we are unable to apply the rule in this case, This court has declared repeatedly that the appointment of a receiver does not operate to transfer the title to the property involved. The title still remains in the insolvent, though possession and control of the property are in the receiver to the end that the estate may be administered under the direction of the court. (*State ex rel. First T. & S. Bank* v. *District Court,* 50 Mont. 259, 146 Pac. 539; *Aetna A. & L. Co.* v. *Miller,* 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760; *State ex rel. Rankin* v. *Bank,* 68 Mont. 342, 218 Pac. 652.)

Another rule provides that the secured creditor must deduct from his original claim any amounts he may have realized from his security, and the balance so shown to be due at the time any particular dividend is distributed shall constitute the basis for computing such dividend. This rule was first applied in 1887, *Third Nat. Bank* v. *Lanahan,* 66 Md. 461, 7 Atl. 615, and reaffirmed in *Bank* v. *Bank,* 80 Md. 371, 45 Am. St. Rep. 350, 27 L. R. A. 476, 30 Atl. 913. It has been followed since in Alabama (*Philadelphia Warehouse Co.* v. *Anniston Pipe Works,* 106 Ala. 357, 18 South. 43), in Arkansas (*Jamison* v. *Adler-Goldman Co.,* 59 Ark. 548, 28 S. W. 35), in Colorado (*Erle* v. *Lane,* 22 Colo. 273, 44 Pac. 591), in Hawaii (*Kapu's Estate,* 18 Haw. 369), in Missouri (*McCune's Estate,* 76 Mo. 200), in Nebraska (*State* v. *Bank,* 40 Neb. 342, 58 N. W. 976),

in Indiana (*Union Trust Co.* v. *Trust Co.*, 194 Ind. 314, 142 N. E. 711), and in Ohio (*State Nat. Bank* .v. *Esterly*, 69 Ohio St. 24, 68 N. E. 582). It requires a readjustment of the basis of distribution at the time each succeeding dividend is declared, and most of the decisions sustaining it were influenced by local statutory regulations.

In this state we do not have any statutes which reflect upon [1] the matter directly, but our Probate Practice Act does furnish a guide to what we deem to be a proper solution of the question. Section 10174, Revised Codes, provides that every claim presented against an estate of a deceased person "must be supported by the affidavit of the claimant, or someone in his behalf, that the amount is justly due, that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of the affiant." Section 10176 provides that every claim, to be effective, must be allowed by the administrator and district judge, or, if rejected, must be reduced to judgment; which judgment merely establishes the claim in the same manner as if it had been allowed by the administrator and judge. (Sec. 10185, Rev. Codes.) Section 10309, Revised Codes, provides: "If the estate is insufficient to pay all the debts of any one class, each creditor must be paid a dividend *in proportion to his claim*." In the classification of claims preference is given to the debts of the deceased, secured by mortgage on real or personal property (sec. 10307, Rev. Codes; *Horsfall's Estate*, 20 Mont. 495, 52 Pac. 199), but no distinction whatever is made between claims secured by pledge and unsecured claims. It is thus demonstrated that it is the amount actually due the creditor at the time he makes presentation which constitutes *his claim*. In other words, he must deduct any amounts which he has received from his security after the death of the deceased and before he makes presentation, and the balance then due is fixed definitely as the basis upon which to compute dividends to him from the general assets of the estate involved. For this reason it is impossible to apply the bankruptcy rule or the

so-called chancery rule to the distribution of the estate of a deceased insolvent, where any collections have been made from security held by a creditor.

The rule just considered, which fixes the amount due the secured creditor at the time he presents his claim, as the basis for computing dividends to him from the general assets of the estate, is the equity rule as established and enforced by the English courts (*Mason* v. *Bogg,* 2 Mylne & C. 443; *Kellock's Case,* L. R. 3 Ch. App. 769) and applied by the supreme court of Illinois in *Levy* v. *Bank,* 158 Ill. 88, 30 L. R. A. 380, 42 N. E. 129, and apparently followed by the South Carolina court in *Wheat* v. *Dingle,* 32 S. C. 473, 8 L. R. A. 375, 11 S. E. 394. Since it is made the rule by our Code for the computation of dividends from the general assets of the estate of a deceased insolvent, every reason is present for adopting the same rule in winding up proceedings such as the one before us. In principle there is not any difference in the relationship which the receiver of this insolvent bank bears to the creditors of the bank, and that which an administrator of the estate of a deceased insolvent bears to the creditors of the estate. The receiver, in the one instance, or the administrator in the other, is but the agent or officer of the court through which the estate is distributed to those entitled to it. We think the rule is a reasonable one, and since its adoption will tend to uniformity in the law, it should prevail in this instance.

The order is reversed, and the cause is remanded to the district court, with directions to compute the dividends upon the amount due to the corporation at the time its claim was presented in January, 1923.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.