(Decided 5th January, 1887.)

The Third National Bank of Baltimore *vs.*
Thomas M. Lanahan, Trustee, and The Rasin
Fertilizer Company, a Creditor.

*Assignment for the Benefit of Creditors—Obligation of Trus-
tee of Assignor as to Payment of Debts—Debt secured by
Collaterals—Amount on which Dividend is properly Al-
lowed—Proof of Claims.*

Under an assignment for the benefit of creditors, the obligation of
the trustee to pay a debt owing by the assignor, does not depend
on the state of the account between the creditor and the assignor
at the time of the assignment, but at the time when payment is
made.

Where at the time of the assignment a debt of the assignor is se-
cured by collaterals and is subsequently partly paid to the creditor
by moneys realized from the collaterals, before a dividend on the

debtor's estate is made, such creditor is not entitled to a dividend on the full amount of the indebtedness, but only on that portion which remains after deducting the moneys received from the collaterals.

Where a fund is distributed in a Court of equity, if a claim is not disputed, it is always allowed by the auditor on the production of such proof as is required for authenticating a claim in the Orphans' Court.

Such proof, however, is only of a primary character and the opposing party may demand full proof if he choose to do so; but where full proof is demanded the primary proof ceases to be any evidence in the case, and there no longer exists any necessity for its production.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order of the Circuit Court, rejecting the claim of The Third National Bank of Baltimore, and sustaining the exceptions thereto of Thomas M. Lanahan, trustee, and the Rasin Fertilizer Company of Baltimore, and directing the Bank to pay all costs incurred in relation to such exceptions. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Robert Baldwin,* for the appellant.

*Inter sese* the firm is the principal debtor, and Cooper a surety. "In an accommodation bill the acceptor is a mere surety, and is entitled to recover from the drawer whatever he may be compelled to pay in discharge of his suretyship." *Jones vs. Broadhurst,* 9 *Man., Gran. & Scott,* 180.

The liability of Cooper and the firm to the appellant is several and not joint. This question has been decided in the law, equity and bankruptcy Courts. At law: 1 *Dan. on Neg. Inst., pp.* 855–6, *(note), pp.* 594–5, *secs.* 668–9–9a;

*James, &c. vs. Short & Co.*, 18 *La. Ann.*, 257–8; *Bank of Columbia vs. Ross*, 4 *H. & McH.*, 465; *Wood vs. Repold*, 3 *Harr. & J.*, 130–135; *Clopper's Adm'r vs. Union Bank*, 7 *Harr. & J.*, 100; *Johnson vs. Kennion*, 1 *Ames' Cases on Bills and Notes*, 803, reported in 2 *Wilson*, 262; *Reid vs. Furnival*, 1 *Crompt. & Mees.*, 538–9.

In equity: 1 *Story's Eq. Jur.* (13th *Ed.*,) *p.* 572, sec. 560; *Bonser vs. Cox.*, 6 *Beav.*, 84; *Paton vs. Wilkes*, 8 *Chan. Rep.*, 290; *Colebrooke on Collateral Securities, secs.* 85, 210–212.

In bankruptcy: *Downing's Assignee vs. Traders' Bank*, 2 *Dillon C. C. Rep.*, 136, 141–2; *Re Ellerhorst & Co.*, 5 *Nat. Bank. Reg.*, 144; *Re Santher*, 9 *Nat. Bank. Reg.*, 502.

Taking collaterals did not impair or affect the claim of the appellant against the several parties on the discounted paper. 1 *Dan. on Neg. Ins.* (3rd *Ed.*,) 787; *Clopper's Adm'r vs. Union Bank*, 7 *Harr. & J.*, 99, 100; *Gwynn & Co. vs. Lee, et al.*, 9 *Gill*, 138; *Colebrooke on Collateral Securities, secs.* 2, 104; *Brewster & Spratt vs. Frazier*, 32 *Md.*, 302; *Hayes vs. Wells & Babbitt*, 34 *Md.*, 512–517; *Emes, et al. vs. Widdowson*, 4 *Carr. & P.*, 151; *Bonser vs. Cox*, 6 *Beav.*, 85.

The collaterals were, in fact, intended to protect Cooper, and in the transaction with the appellant were treated as his and as pledged by him. Even if these collaterals had been pledged by the firm as its own, the contention of the appellees with reference thereto would not hold good. The appellant would, nevertheless, be entitled to a dividend on the whole amount of its claim, and not only on the surplus after crediting amounts received from collaterals. This has been expressly decided. *Trust Estate of Woods, Weeks & Co.*, 52 *Md.*, 549, 550; *Lewis vs. United States*, 92 *U. S.*, 618–623.

Filing a claim is not, by the terms of the deed, made a condition precedent to entitle the creditor to a dividend. The Act of 1798, ch. 101, referred to requires no affidavit

as to security in the case of the proof of a judgment claim, whilst such affidavit is required in the proof of a note or open account. Its purpose is to prevent the creditor from receiving more than 100 per centum of the claim, in case the dividend exceeds in amount the balance remaining over and above what is received from the security. The Act does not state that the creditor shall receive a dividend only on the surplus. *Alexander's Ch. Pr.*, 135.

"No mode is prescribed by the Act of 1785, chapter 72, for establishing the debts. This is left entirely to the Chancellor's decision." *Strike vs. McDonald*, 2 *Harr. & G.*, 237.

The doctrine of the application of payments does not affect this case. It is applied in favor of the party making payment. *Jones vs. United States*, 7 *How.*, 688; *Trustees of German Lutheran Church vs. Heise & Co.*, 44 *Md.*, 471.

*Frank Gosnell*, and *John Prentiss Poe*, for the appellees.

The Legislature, as early as 1798, prescribed the formula for the proofs of debts against the estates of decedents, and that Act requires the claimant, in his affidavit, to say that the statement of his debt is true, and "that no part of the money intended to be secured by such instrument hath been received, or any *security or satisfaction given* for the same, except what (if any) is *credited.*" *Rev. Code, Art.* 50, *sec.* 153; *Art.* 93, *sec.* 87, *of the Code.*

As is said by Judge FISHER, in his opinion in the Court below, "no form has been provided for the proof of claims in chancery, yet the practice in this Court has always been similar to that in the Orphans' Court, and the formula for proof has been substantially the same, adopted doubtless in analogy to it;" and he cites *Dorsey vs. Hammond*, 1 *Bland*, where the Chancellor, on page 470, says: "It has always been the practice in this Court to require all claims to be proved before they are allowed either for the whole, or admitted to a dividend, in the same manner as they

would be required to be authenticated in order to be passed by an Orphans' Court, and therefore no claim coming in under a creditors' bill, will be passed or allowed, which could not, according to law, be passed and allowed against the personal estate by an Orphans' Court. This was the practice long before the passage of the General Testamentary Act, 1798, ch. 101; and has continued to be so ever since." See *Hammond vs. Hammond,* 2 *Bland,* 366; *Kent vs. Waters,* 18 *Md.,* 72.

In case of prior payments, whether made by the debtor or his surety, judgment can be obtained *for the balance only. Maitland vs. Citizens Bank,* 40 *Md.,* 570.

This long established mode of proving claims was no doubt the foundation of the practice and law which has obtained in this State for so many years, requiring a creditor who has collateral security, and comes into a Court of equity to participate in the distribution of the property of a debtor who is insolvent, to credit such amount as he has realized from his collaterals, and take a dividend on the balance only. *Hammond vs. Hammond,* 2 *Bland,* 384; *Hall vs. Farmers' National Bank,* 53 *Md.,* 120; *Burrill on Assignments,* (4th *Ed.,*) 668.

The question raised in this case was decided in *Wurtz vs. Hart,* 13 *Iowa,* 515. There a creditor under a general assignment, who had special security, was required to resort to his security, and was allowed to claim a dividend only upon the amount remaining unpaid, after exhausting the property upon which he had his lien. It is also the law in New York and Massachusetts. *Midgely vs. Slocomb,* 32 *How. Pr. Rep.,* 427 ; *First National Bank vs. Eastern R. R. Co.,* 124 *Mass.,* 524 ; 1 *Story's Eq. Jur.,* sec. 633 ; *Irons vs. Manufacturers' Nat. Bank,* 27 *Fed. Rep.,* 592, 597.

The doctrine of application of payment has another bearing on this case. Upon examination of the books of the bank, it was discovered that the account of Rasin &

Co. ran through several ledgers, and as each one was closed all collaterals there collected were credited, a balance struck and carried to the next succeeding ledger; this was done through several books. Then again we find that sufficient collaterals were credited to extinguish five entries, and a part of the sixth entry on the debit side. According to the law as settled in this State, this of itself would prevent the appellant from setting up a claim for a dividend on any one of those five notes. *Dickey vs. Permanent Land Co.*, 63 *Md.*, 166; *Hammet, Adm'r vs. Dudley*, 62 *Md.*, 157.

The entries on the debit side of the bank books were extinguished to the extent of the collaterals received, and entered on the credit side, thus reducing its claim to what it has already received its dividend on, which is, in point of law and by right, more than it is entitled to.

BRYAN, J., delivered the opinion of the Court.

The material facts of this case lie within a very narrow compass. R. W. L. Rasin as the general partner of the firm of R. W. L. Rasin & Co. made an assignment for the benefit of his creditors, both individual and partnership. The assignment embraced all the property of the firm and all the separate property of the grantor. The Third National Bank was a creditor of the firm. A portion of this indebtedness arose in this way: E. K. Cooper, known as a special partner of the firm, executed five promissory notes of five thousand dollars each payable to the order of R. W. L. Rasin & Co. These notes were secured by a pledge of certain other notes belonging to the partnership, and which were owing from its debtors. They were delivered to the Bank, together with the collateral securities, and by it discounted after they had been endorsed in the firm name.

After the execution of the assignment, judgments were obtained by the Bank on these notes and on other causes

of action against Rasin, trading as R. W. L. Rasin & Co. By due proceedings the Circuit Court of Baltimore City has assumed administration of the trust estate, which is not sufficient to pay the creditors. The Bank has filed its claim with the auditor for payment out of the assets in the hands of the trustee. Before the filing of the claim, it had collected a large sum from the collaterals pledged to secure the discounted notes. It contends that it is entitled to a dividend on the full amount of the indebtedness without deducting the sum received from the collaterals; admitting, however, that this dividend must not exceed the amount due, when added to the sum already paid.

The Circuit Court is administering the trust according to the terms of the deed. It seems to us, therefore, that the distribution must be made according to these terms. The trustee is required to pay all the partnership creditors in full if the partnership assets are sufficient, and, "if not, then ratably and equally according to their respective amounts." It cannot be denied that the sum received from the collaterals diminished the indebtedness of the partnership. We do not perceive how any question in respect to the marshalling of assets can arise. It is simply the case where a portion of a debt is paid by property of the debtor which had been pledged to secure its payment. The question is not whether the other creditors can compel the Bank to seek payment from the collaterals before claiming distribution from the trust fund. The Bank has actually received payment to a certain extent. The portion remaining unpaid is an ordinary debt reduced to judgment. It has no priorities over other judgments of the same date. It can have no superior claim against the debtor by reason of the fact that a portion of it has been paid by the proceeds of property specially pledged. The same means of enforcing payment against the judgment debtor are open to the Bank as belong to

any other judgment creditor, but none other or greater. Now, the trustee is bound to pay "ratably and equally, according to their respective amounts," such debts as the grantor was bound to pay. He has no power to pay any debt which the grantor does not owe; nor can he pay one creditor a larger dividend than he pays to another. If one creditor has a lien, or a priority at law or in equity, of course he must be paid according to the rights which the law has given him. Where there are no liens or priorities, it is necessary to ascertain what sum is payable by the debtor who made the assignment, and the creditor is entitled to be paid the amount in full, or in due proportion. The obligation of the trustee to pay does not depend on the state of the account between the creditor and the assignor at the time of the assignment; but at the time when payment is made.

There was some discussion at the bar, about the nature of the affidavit which a creditor was required to make when he filed his claim with the auditor. Where a fund is distributed in a Court of equity, if a claim is not disputed, it is always allowed by the auditor on the production of such proof as is required for authenticating a claim in the Orphans' Court. There is no tradition in the profession showing that a different practice has ever prevailed. Chancellor BLAND, in *Dorsey vs. Hammond*, 1 *Bland*, 470, says that it existed long before the passage of the Testamentary Act in seventeen hundred and ninety-eight. He applied this rule of practice in *Strike vs. McDonald*, 2 *Harris and Gill*, 235, where a deed was set aside for fraud against creditors, and distribution was made amongst them. His decree in this case was affirmed by this Court, page 262. In *Allender vs. Trinity Church*, 3 *Gill*, 172, the Court alludes to this sort of proof, in terms which show that it was regarded as ordinarily necessary in uncontested cases. Of course, such proof is only of a primary character, and the opposing party may demand full proof if he chooses to do so. In the

case last cited it is said in referring to evidence of this kind, "Primary proofs stand in the place of full proof, until full' proof is demanded. From that moment they cease to be any evidence in the case, and there no longer exists any necessity for their production." This practice is of importance as showing the facts of which the Court must be assured by the claimant's oath, before it will allow his claim to be paid, even when not contested. According to this rule it was necessary for the Bank to file an affidavit showing that it had not received any portion of the sums for which the judgments were rendered, except such as were credited. Article 93, section 84, of the Code. In cases of insolvency, the statute law requires the distribution to be made according to the principles of equity. Article 48, section 10. Equality is equity, and this equality is to be declared according to the established rules of equity practice. If the deed of trust had prescribed any other rule of distribution, it would have been void by the thirteenth section of the Act of 1880, chapter one hundred and seventy-two.

We have been referred to certain decisions made by the English Courts in cases arising under Acts of Parliament, known as the "Winding up Acts." It is foreign to the present purpose to discuss these opinions, learned and able though they are, and in every respect entitled to the highest consideration, because the question before us must be decided according to the jurisprudence of Maryland.

The learned Judge of the Circuit Court held that the Bank was entitled to a dividend only on that portion of its claim which remained unpaid after deducting the sums of money received from the collaterals. We agree in opinion with him.

*Order affirmed, with costs.*

(Decided 5th January, 1887.)

Judge MILLER dissented.