# Philadelphia Warehouse Co. v. Anniston Pipe Works.

*Bill in Equity for Appointment of a Receiver and Establishment of Priority of Creditor's Claim.*

1. *Debtor and creditor; appropriation of funds.*—A creditor receiving money derived from sources or funds, whether from collateral or otherwise, which have been devoted to a particular purpose, must appropriate the amount received to that particular purpose and to no other uses.

2. *Same; collateral security; dividends in case of insolvency.*—A creditor holding collaterals at the time the insolvency of his debtor is adjudged, whether by assignment or otherwise, and who receives money from such collaterals, must credit the amount so received on the debt due him; and when a dividend on the insolvent debtor's estate is declared, such a debtor is entitled to a dividend on the balance of the debt remaining unpaid after so crediting the proceeds of the collaterals.

APPEAL from the City Court of Anniston, in Equity.
Heard before the Hon. JAMES W. LAPSLEY.

On March 2d, 1891, the First National Bank of Anniston and S. E. Noble filed their bill on the equity side of the city court of Anniston against the Anniston Pipe Works and the State Trust Company, for themselves as judgment creditors of the Anniston Pipe Works, and in behalf of all other creditors of the Anniston Pipe Works, who might come in and unite in the suit and share in

the expenses thereof. The bill alleged that at the suit of the State Trust Company, as trustee, for the purpose of foreclosing a mortgage given by the Anniston Pipe Works to it to secure bonds, a receiver had been appointed to take possession of all the property, real or personal, of the Anniston Pipe Works that was included in said mortgage; that the receiver so appointed had taken into his possession, in addition to the property included in said mortgage, other property of the Anniston Pipe Works, upon which the complainants and the other creditors of the Anniston Pipe Works have a prior and superior claim. The prayer of this bill was that a receiver should be appointed to take charge of this additional property; that all the creditors of the Anniston Pipe Works be required to file and prove their claim before the clerk and register of the court; and that upon the final hearing the priority of the claims of the respective creditors of the Anniston Pipe Works be determined, the property be sold, and out of the proceeds of said sale the complainants and the other creditors, so entitled, be paid.

In accordance with the prayer of this bill the court rendered a decree requiring all the creditors of the Anniston Pipe Works to file and prove their claim, and further ordered that contests be allowed to be filed. Of the claims filed there was a contest of only one, which was that of the Philadelphia Warehouse Company. The facts having reference to this contest, as shown before the clerk and register, were substantially as follows: At the date of the insolvency of the Anniston Pipe Works, that is, at the time the company went into the hands of the receiver, the Anniston Pipe Works was indebted to the Philadelphia Warehouse Company in the sum of $23.183.50, to secure which indebtedness the Philadelphia Warehouse Company held certain collateral. This collateral, or a portion of it, was sold from time to time, and applied to the payment of said indebtedness, so that the said indebtedness was actually reduced by said payments from the collaterals so sold to the sum of $5,712.47, as of the first day of December, 1893. The Philadelphia Warehouse Company duly filed with the clerk and register of the court, within the time prescribed by the order of the court, a claim against the Anniston Pipe Works for the sum of $23,183.50, claim-

ing that it was entitled to a *pro rata* share out of any assets in the hands of the receiver for distribution upon that sum. The complainants, the First National Bank of Anniston and S. E. Noble and the receiver, contested the claim so filed by the Philadelphia Warehouse Company, claiming that the amount of indebtedness of the Anniston Pipe Works to the Warehouse Company was only the sum of $5,712.47, as of the first day of December, 1893, and that the said Philadelphia Warehouse Company was entitled only to a *pro rata* share upon that amount so due at that time.

Upon the reference, the clerk of the court, after ascertaining the above facts to be true, decided that the Philadelphia Warehouse Company's claim against the Anniston Pipe Works was only for the sum of $5,712.47, with interest thereon, and that the Philadelphia Warehouse Company should be allowed to prorate with the other creditors only upon the said sum of $5,712.47, and not upon the sum of $23,183.50; and he so reported his finding to this court. To this finding and report the Philadelphia Warehouse Company filed exceptions; and upon the hearing of the report and the exceptions thereto, the court rendered a decree overruling the exceptions, and confirming the said report.

By petition the Philadelphia Warehouse Company was made a party complainant in the cause of the First National Bank of Anniston and S. E. Noble against the Anniston Pipe Works and the State Trust Company, for the purpose of prosecuting an appeal from the above mentioned decree. The said decree is now appealed from, and the same is here assigned as error.

J. J. WILLETT, for appellant.—The creditors of an insolvent corporation, whose debt is secured by collateral, are entitled, on distribution of the assets, to a dividend on their original claim, notwithstanding there was a reduction of said claim by sale of the collaterals. Such creditor cannot be required to allow a credit for any collections made after the date of the declaration of insolvency from said collateral security held by them.—*Chem. Nat. Bank v. Armstrong*, 59 Fed. Rep. 372; *Patten's Appeal*, 84 Amer. Dec. 479; *Keim's Appeal*, 27 Pa. St. 42; *Miller's Appeal*, 35 *Id.* 481; *Bosler v. Exchange Bank*, 45 Amer. Dec. 665; *Shunk's App.*, 2 Pa. 304; *Morris v.*

. [Philadelphia Warehouse Co. v. Anniston Pipe Works,]

*Olwine,* 22 Pa. 441 ; *Brough's Estate,* 71 Pa. 460 ; *Graeff's Appeal,* 79 Pa. 146 ; *People v. Remington & Sons,* 8 L. R. Ann. 458 ; *Paddock v. Bates,* 19 Brad. Rep. (Ill.) 470 ; *Findlay v. Hosmer,* 2 Conn. 350 ; *Moses v. Ranlet,* 2 N. H. 488 ; *White v. Knox,* 111 U. S. 784 ; *Bank v. Colby,* 21 Wall. 609 ; *Lewis v. U. S.,* 92 U. S. 618 ; 3 Pom. Eq. Jur., § 1414; Story Eq. Jur., § 564b ; *Logan v. Anderson,* 18 B. Mon. 114 ; *Bank v. Patterson,* 78 Ky. 291 ; *Brown v. Bank,* 79 N. C. 244 ; *Kellogg v. Miller,* 22 Or. 406, 30 Pac. Rep. 229 : *Allen v. Danielson,* 15 R. I. 480, 8 Atl. Rep. 705 ; *Bank v. Haug,* 82 Mich. 607 ; *West v. Bank,* 19 Vt. 403 ; *Kortlander v. Elston,* 2 C. C. A. 657, 52 Fed. Rep. 180 ; *Bank Cases,* 92 Tenn. 437, 21 S. W. Rep. 1070.

KNOX, BOWIE & PELHAM, *contra.*—The Supreme Court of Massachusetts has decided that a creditor holding collaterals is bound to exhaust his collaterals before he will be permitted to file his claim against the insolvent estate, and then will be allowed to participate only as to the balance due him.—*Amory v. Francis,* 16 Mass. 308 ; *Farnum v. Boutelle,* 13 Metc. 159; *Nichols v. Smith,* 143 Mass. 455. The Supreme Court of Pennsylvania, whose decisions are so much relied on by opposing counsel, has decided the question both ways. In the cases of *Bank v. McCalmont,* 4 Rawle 307, and *Perit v. Pittfield,* 5 Rawle 165, the Supreme Court of that State adopted a rule very similar to that obtaining in Massachusetts ; but this was subsequently departed from, and the rule contended for by opposing counsel followed in later cases—*Morris v. Olwine,* 22 Pa. 441 ; *Keim's Appeal,* 27 Pa. St. 42 ; *Miller's Appeal,* 35 Pa. St. 481 ; *Patten's Appeal,* 45 Pa. St. 151, 84 Amer. Dec. 479. In New York, a like vacillation on this subject seems to have occurred. In *Besley v. Lawrence,* 11 Paige 581 ; *Strong v. Skinner,* 4 Barb. 546; and *Midgeley v. Slocumb,* 32 How. 426, the secured creditor was required to account for his collaterals before participating in the general fund. This rule was departed from, however, in that State in the late case of *People v. Remington & Sons,* 121 N. Y. 328, 8 Lawyers' Rep. Ann. 458.

It is a well settled principle of equity jurisprudence, that where one creditor has a lien on two funds, and another has a lien only on one of them, the former must exhaust the fund upon which the latter has no lien.—

*Nelson v. Dunn*, 15 Ala. 501; *Besley v. Lawrence*, 11 Paige 581; *String v. Skinner*, 4 Barb. 560; *Wurtz v. Hart*, 13 Iowa 519; *Knowles v. Knowles*, 12 R. I. 400. But it is also true that this rule will not be enforced where it would operate to the prejudice of the party entitled to the double security.—3 Pomeroy's Eq. Jur., 1414; 1 Story's Eq. Jur., § 564b. It seems to us, that where a creditor holds collaterals, he ought not to be debarred from filing his claim against the insolvent estate simply because he has been diligent and obtained security for his debt over and beyond creditors less diligent, and he ought not to be required to exhaust his collaterals before being allowed to participate. So long as the creditor holds the collaterals without realizing upon them his debt continues in full force, and he is entitled to file and prove it against the insolvent estate and participate in whatever dividends may come from that source. But where he does not choose to do this, but proceeds to sell the collaterals and applies the proceeds to the payment of his debt, his debt is then extinguished *pro tanto*, whether he allows it or not. The law operates a satisfaction to the extent of the proceeds which he has received from the collaterals, and he is no longer a creditor except to the extent of the balance due on his claim. There is no question of marshalling assets; there is no occasion for a court of equity to exercise its jurisdiction for this purpose. The creditor himself has exercised it; he has marshalled the assets; he has appropriated the proceeds of the sale of the collaterals, and his debt has been reduced *pro tanto*. This view is adopted and ably sustained by the Supreme Court of Maryland in the case of the *Third Nat. Bank v. Lannahan*, 66 Md. 461, 7 Atl. Rep. 615. And this is the view taken by our own Supreme Court, which it is believed is conclusive to sustain the master's report in this case.—*Gusdorf & Co. v. Ikelheimer & Co.*, 75 Ala. 148; 1 Amer. Lead. Cases, 341; *Schiffer v. Feagin*, 51 Ala. 335; *Webster v. Singley*, 53 Ala. 208.

HARALSON, J.—On the question presented in this case, there is a confusion of decisions in some of the States. In Massachusetts it is held, that if a creditor of an insolvent estate have a mortgage as security for and of less value than the amount of his debt, he can claim

from the commissioners who administer the estate only for the difference between his debt and the value of the property mortgaged, (*Amory v. Francis' Admr.*, 16 Mass. 308), and in another case, the court held, that where a creditor holds a mortgage on personal property to secure his debt, and the debtor dies insolvent, the mortgagee cannot prove his debt in full against the debtor's estate, unless he first waive his mortgage; but, if he applies the amount of the mortgaged property towards the discharge of his claim, and a balance is left unpaid, he may prove such balance before the commissioners.—*Farnum v. Boutelle*, 13 Met. 159.

In Iowa it is held, that a creditor under a general assignment for the benefit of creditors, who has a special security, may be required by the other creditors to resort to that security, and can only claim dividend upon the amount remaining unpaid, after exhausting the property on which he has such special lien. The decision is based on the reason, as assigned, that if a creditor has two funds out of which he may make his debt, he may be required to resort to that fund upon which another has no lien.— *Wurtz v. Hart*, 13 Iowa, 519.

In Pennsylvania, New York, New Hampshire, Connecticut and Illinois, their courts hold, that one who has a claim against an insolvent estate of a decedent, or of one who has made general assignment for the benefit of creditors, for which claim he holds collateral security in some form, which has not been paid, in whole or in part, may be allowed to prove his whole claim as a debt against the estate, on which he will be allowed the average dividend with each of the other unsecured creditors, and not merely on the residue only, after deducting the value of the security held, which principle seems to be very generally recognized as consistent with that other principle, so well recognized, that the pledgee holds collateral securities for the payment of the pledgor's principal obligation, and is entitled to proceed with enforcement of both the principal debt and collateral securities at the same time, and to judgment and execution, although entitled to but one satisfaction.—Colebrook on Col. Sec., § 113 and authorities ; *Chapman v. Lee,* 64 Ala. 483 ; *Patten's Appeal*, 45 Penn. St. 151, s. c. 84 Am. Dec. 479 ; *People v. Remington*, 121 N. Y. 328 ; *Moses v. Ranlet*, 2 N. H. 488 ; *Findlay v.*

*Hosmer*, 2 Conn. 350; *Paddock v. Bates*, 19 Bradwell (Ill.) 470; *In re Bates*, 118 Ill. 524. And in Tennessee and New York, their courts have gone further and hold that the foregoing principle is the proper one, even where a part of collaterals have been collected and is in the hands of the creditor at the time he comes to prove and have his claim allowed against the insolvent estate; and they appear to approve the rule, that if the collaterals the creditor holds are more than sufficient to satisfy any difference after application of the dividends, the personal representative of the insolvent may redeem them for the benefit of his estate.—*Patton's Appeal*, 45 Pa. St. 151, *supra; People v. Remington*, 121 N. Y. 328, *supra*.

On the other hand, the Maryland court, in the case of a general assignment by an insolvent debtor, for the benefit of creditors, holds that the obligation of a trustee to pay a debt owing by the assignor does not depend on the state of the account between the creditor and the assignor at the time of the assignment, but at the time when payment is made; and that, where at the time of the assignment, a debt of the assignor is secured by collaterals which are subsequently partly paid to the creditor before a dividend on the debtor's estate is made, such creditor is not entitled to a dividend on the full amount of the indebtedness, but only on that portion which remains, after deducting the moneys received of him from the collaterals placed in his hands to secure the debt.— *Third Nat. B. of Baltimore v. Lannahan, Trustee*, 66 Md. 461. This decision seems to us to be so simple, just, expeditious, and inexpensive, as to commend it for approval. The result accomplished by such a rule is just what may be accomplished by more indirect and expensive procedure, and with greater delay, in any of the States where a creditor is not required to credit his debt against an insolvent estate, at the time of proving his claim against it, with the collections on collaterals for the debt placed in his hands by the insolvent debtor. And this ruling fully accords with the views expressed by this court in the case of *Gusdorf & Co. v. Ikelheimer & Co.*, 75 Ala. 153, where a judgment and execution creditor, holding collaterals upon which he had realized, refused to credit his debt with the proceeds, but sought to participate in another fund with, and to the exclusion

of, other creditors, to the full amount of his claim, without deductions for the payments made, on the score of having a prior execution lien on the fund thus sought to be appropriated. The court among other things, and on the questions we are now considering said, that "The collaterals, the choses in action, transferred to Gusdorf & Co., were intended by the debtor, and were by them received, as a source or fund from which the debt reduced to judgment should be paid. It is true, that by taking the collaterals, the right to proceed by execution on the judgment was not intended to be delayed or postponed, and the creditor had the right to retain the collaterals while pursuing legal remedies upon the judgment, and, if necessary to his full security and satisfaction, would not have been interfered with, or compelled to resort to the one in preference to the other. But having realized, by collections from the collaterals, the sum now in controversy, before satisfaction was obtained through the medium of the execution, that sum was by operation of law immediately applied to the satisfaction of his debt, extinguishing it *pro tanto*. A payment to him by the debtor of a like sum, at that instant of time, would not have been for that purpose more effectual. The source or fund from which moneys are derived, often directs and controls their appropriation. And when a creditor receives moneys, derived from sources or funds which have been devoted to particular purposes, he is without right to appropriate them to other uses."—1 Am. Lead. Cases, 341; *Schiffer v. Feagin*, 51 Ala. 335; *Webster v. Singley*, 53 Ala. 208.

There was no error in the ruling of the court overruling exceptions to the register's report and confirming the same.

Affirmed.