## CITIZENS & SOUTHERN BANK *v.* ALEXANDER, receiver.

Where a creditor of an insolvent bank holds collateral security for a portion of the debt, and the receiver of the bank realizes from its assets an amount of cash to be applied on its debts, the creditor is not entitled to a dividend upon the entire indebtedness due, as though he had no collateral. Such secured creditor must first apply the amount realized from the collateral to reduce the amount of indebtedness, and is entitled, like other creditors, to a dividend upon the unpaid balance.

JUNE 13, 1917.

Intervention. Before Judge Hammond. Richmond superior court. December 22, 1915.

The State of Georgia, through its attorney-general, filed its petition against the Irish-American Bank, of Richmond county, alleging, among other things, that the bank was insolvent, and praying that the court appoint a receiver to take charge of its assets and administer them for the benefit of creditors. The court appointed a receiver who took charge of the assets of the bank and proceeded to marshal them, all creditors being notified to intervene and prove their claims. The Citizens and Southern Bank filed and proved its claim, which amounted to $96,904.55. The receiver reported to the court that he had in hand funds sufficient to pay a dividend of 8 per cent. on the amount due each creditor. While the receiver admitted the correctness of the claim of the Citizens and Southern Bank, he reported that that bank was entitled to a dividend only upon the sum of $84,855.25, because of the fact that the bank had collected the sum of $12,049.30, from certain collateral pledged with it to secure a portion of its indebtedness. The Citizens and Southern Bank filed its intervention, claiming a dividend upon the sum of $96,904.55, instead of upon the sum of $84,855.25. Upon the hearing the court ordered that the receiver pay to the intervenor the dividend of eight per cent. upon only the amount due after its claim had been reduced by deducting therefrom the amount realized by it from the collateral collected. To this ruling the intervenor excepted.

*Wright & Wright* and *Adams & Adams,* for plaintiff.

*Archibald Blackshear,* for defendant.

GILBERT, J. (After stating the foregoing facts.) The sole question presented in this case is whether the trial court applied the proper rule for the distribution by the receiver of the assets of

the insolvent bank. Counsel for both parties to the case frankly concede that the precise question is presented to this court for the first time. In the case of *Georgia Seed Co.* v. *Talmadge,* 96 *Ga.* 254 (22 S. E. 1001), it was held that the creditor, having funds of his debtor on deposit, could credit such funds on the debt, and then share as to the unpaid balance with other creditors in the general distribution of the assets of the debtor, the debtor being an insolvent bank in the hands of a receiver. There was no contention that the creditor was entitled to a dividend on the entire debt, without deducting the credit. That case differed from the present case in that respect, and also in that the fund held by the creditor was not collateral security. For analogous cases see *Strickland* v. *Dent,* 25 *Ga.* 45; *Lowry Banking Co.* v. *Empire Lumber Co.,* 91 *Ga.* 624 (5), 633 (17 S. E. 968).

It is well recognized that the authorities are in irreconcilable conflict, and have been so almost from the beginning of recorded decisions, on this question. In 7 Corpus Juris, 750, will be found a collection and classification of the cases, among which is the case of Merrill *v.* National Bank of Jacksonville, 173 U. S. 131 (19 Sup. Ct. 360, 43 L. ed. 640). In this case may be found an elaborate history of the four different rules that have been applied in this country and in England, as well as able and learned opinions of three Justices of the Supreme Court of the United States. These rules are as follows:

"Rule 1. The creditor desiring to participate in the fund is required first to exhaust his security and credit the proceeds on his claim, or to credit its value upon his claim and prove for the balance, it being optional with him to surrender his security and prove for his full claim.

"Rule 2. The creditor can prove for the full amount, but shall receive dividends only on the amount due him at the time of a distribution of the fund; that is, he is required to credit on his claim, as proved, all sums received from his security, and may receive dividends only on the balance due him.

"Rule 3. The creditor shall be allowed to prove for, and receive dividends upon, the amount due him at the time of proving or sending in his claim to the official liquidator, being required to credit as payments all of the sums received from his security prior thereto.

"Rule 4. The creditor can prove for, and receive dividends upon, the full amount of his claim, regardless of any sums received from his collateral after the transfer of the assets from the debtor in insolvency, provided that he shall not receive more than the full amount due him."

The majority opinion was delivered by Chief Justice Fuller, with whom concurred four Associate Justices, adopting the fourth, or what is known as the English chancery rule. This is the rule for which the plaintiff in error in this case contends. Mr. Justice White, now Chief Justice, delivered a dissenting opinion, and with him concurred Mr. Justice Harlan, and Mr. Justice Mc-Kenna; Mr. Justice Gray also delivered a dissenting opinion. It is of interest to note that the rule adopted by the majority had previously been applied in the United States Circuit Court of Appeals in the case of Chemical National Bank *v.* Armstrong, 16 U. S. App. 465 (59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231), the court being composed of Mr. Justice Brown, and Circuit Judges William Howard Taft, and Horace Harmon Lurton,˙ the last named afterwards becoming an Associate Justice of the Supreme Court of the United States. Mr. Justice White, we think, has shown that "inequality and injustice must arise from the application" of the chancery rule of distribution. The dissenting opinions of both Mr. Justice White and Mr. Justice Gray cite authority for their contention that the chancery rule had not been adhered to in England either continuously from the beginning, or at the time of the decision in the Merrill case, supra. They further show that the rule at that time in England was that "a secured creditor can only prove for the balance which may remain after deduction of the proceeds or value of collateral security." It would be a work of supererogation, if not presumption, to argue this question, which has challenged and received the best thought and attention of the ablest judicial minds in courts of last resort in England and in the United States. We merely add that, in our opinion, the chancery rule does not operate with equal justice among the secured and the unsecured creditors,˙ nor among the different classes of secured creditors. It would give to one who held both secured and unsecured claims an unjust advantage or preference over one who held only an unsecured claim, which was not intended by the parties. The holder of both secured and unsecured claims would,

in effect, obtain a benefit in behalf of his unsecured claim by reason alone of having also a secured claim. It should be noted that only the correctness of the ruling of the trial court is reviewed in this case, as the record contains no issue as to the other principles stated in the four rules above quoted from the Merrill case, supra.

The trial court did not err in rejecting the chancery rule, and in directing that the receiver pay a dividend to the intervenor on the amount due after crediting the amount realized by the intervenor from the collateral security.

*Judgment affirmed. All the Justices concur.*