## UNION TRUST COMPANY *v.* FLETCHER SAVINGS AND TRUST COMPANY ET AL., RECEIVERS.

### [No. 24,157. Filed February 26, 1924.]

RECEIVERS.—*Allowance of Claims.—Claims Partly Secured by Collateral.—*A creditor of an insolvent corporation which is in the hands of a receiver, who has received a part of his debt by the sale of collateral which he held as security therefor, is not entitled to have his claim allowed for the full amount of the debt as a basis for determining his share of the fund for distribution among creditors, but only the remainder of the debt after deducting the amount received from the collateral.

From Marion Circuit **Court (29,530)**; *Harry O. Chamberlain*, Judge.

Claim by the Union Trust Company of Indianapolis against the Fletcher Savings and Trust Company of Indianapolis and another trust company as receivers for the German Investment and Securities Company. From a judgment for defendants, the claimant appeals. *Affirmed.*

*Charles Remster, Henry H. Hornbrook, Albert P. Smith, Paul Y. Davis* and *Kurt F. Pantzer*, for appellant.

*Samuel D. Miller, William H. Thompson, Frank C. Dailey* and *Albert L. Rabb*, for appellees.

GAUSE, J.—Appellees were appointed receivers of the insolvent German Investment and Securities Company on July 15, 1918. At the time of such appointment, said insolvent company was indebted to appellant in the sum of $18,000, which was evidenced by a promissory note. Appellant held as collateral security for such debt certain bonds. Appellant filed its claim for the $18,000, and thereafter, and before any distribution was made by the receiver, appellant sold said collateral security for the sum of $10,000. The question

for decision is whether appellant is entitled to have its claim allowed for the full amount of $18,000, and share in the general distribution on that basis, or whether its claim has been reduced to $8,000, the amount remaining after crediting the amount received from the sale of the collateral.

Appellant claims that its share of the dividends from the general assets should be figured on the basis of the amount of its claim at the time of the appointment of the receiver, subject, of course, to the qualification that it should in no event receive more than the face of its claim. The court below reduced said claim by the amount realized from the sale of collateral, and allowed it in the sum remaining.

There are two lines of decisions in this country on the question here involved, it being held by some courts that a creditor of an insolvent, and who holds collateral security, is entitled to share in the distribution of the general estate on the basis of the original amount of his claim, notwithstanding he may have received a part of his claim after the determination of insolvency, by a sale of his collateral; provided that he shall not receive more than the full amount of his claim; this rule being referred to frequently as the "chancery rule."

Other courts adhere to the doctrine that the creditor's claim is reduced, *pro tanto,* by any amount he has received from his collateral, before distribution, and his proportionate share in the general estate is determined on the basis of the unpaid amount of his claim; this rule is often called the "bankruptcy rule." The latter rule gets its name from the fact that it is the one applied by bankruptcy courts in the distribution of the estates of insolvents.

The question under consideration is a new one in this state and we are free to adopt the view that seems to us the most equitable and just to all parties.

Some of the cases cited as sustaining the so-called chancery rule were where the insolvent had made a deed of assignment for the benefit of his creditors, and the conclusion is reached that the creditors, by such deed, became invested with an ownership in the property conveyed, and their share therein should be determined from their status at that time. Most of the cases cited by appellant to sustain the chancery rule assume that to require the creditor to deduct the amount he has received from his collateral would deprive him of some of his contract rights, which his diligence in requiring security had given him. Two cases frequently cited to sustain the rule contended for by appellant, and in which most of the authorities to the same effect are referred to, are, *Merrill* v. *National Bank of Jacksonville* (1898), 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640, and *Chemical Nat. Bank* v. *Armstrong* (1893), 59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231. In the first case cited, Chief Justice White wrote a dissenting opinion, concurred in by Justices Harlan and McKenna, in which the arguments urged in favor of the chancery rule are fully discussed, and the bankruptcy rule advocated. In that opinion, it was pointed out that the so-called bankruptcy rule did not have its origin in any express statutory provision, but resulted from the requirement for a ratable distribution of the estate. The argument that to follow the bankruptcy rule would deprive the secured creditor of contract rights was also discussed.

Appellant insists that, because it was diligent in obtaining security for its debt, to require it to reduce the amount of its claim to the amount remaining unpaid would deprive it of a part of the benefit it acquired by such diligence; that it held security for the whole debt and, before insolvency, it could have proceeded against

the debtor's general estate, and also against the collateral.

True, the security was pledged against the whole debt, but the actual fact is that it was only security to the extent of the value of the collateral, and the practical result was that, as to the amount of the debt in excess of the value of the collateral, appellant had no security. As to the part of its debt for which it, in effect, had no security, it should stand upon an equal footing with other unsecured creditors. To adopt the rule urged by appellant would give it an advantage over other creditors as to the unsecured part of its claim.

In the case at bar, appellant's diligence had resulted in its having security for $10,000 of its claim. It had no security for $8,000 thereof; that is, appellant was trusting the debtor, and his general estate, for the amount of the debt in excess of the value of the security, the same as any other unsecured creditor. Suppose the estate will pay its general creditors 45 per cent.; then, if we grant appellant's contention, it would receive approximately $8,000 as a general creditor, and $10,000 from its collateral, thus being paid in full, although $8,000 of its claim was without security. If there is another general creditor with a claim for $8,000, he will receive approximately $3,500. In such a case, the appellant would not only be rewarded for its diligence to the extent of its security, but would also have an advantage over another creditor who, like appellant as to a part of its claim, was putting his trust in the debtor and his general estate. Certainly appellant should be given the full benefit of its foresight in demanding security, but if it only was farsighted enough to require security worth $10,000 for a debt of $18,000, it should not have the same benefit it would have derived from security worth the whole debt.

By the action of the court below, appellant received the full benefit of its contract for the collateral, and for the balance of its debt, it will be treated as the other creditors similarly situated.

When the collateral was sold and the proceeds applied upon the debt, it operated as a payment of the debt to that extent. The debt was reduced that much and the debt now amounts to only $8,000.

The appellant is in the same position as if, before the receivership, it had brought suit against the debtor for the full amount, and then, before judgment, part of the debt had been paid by a sale of the collateral. In such a case, appellant could have recovered judgment for only the remaining portion.

As tending to sustain the rule that a secured creditor who has disposed of his collateral is entitled to prove his claim only for the amount remaining unpaid after deducting the amount he has received from the security, see the following cases: *In re Kapu* (1907), 18 Hawaii 369; *Doolittle* v. *Smith* (1898), 104 Iowa 403, 73 N. W. 867; *Third National Bank of Baltimore* v. *Lanahan, Trustee* (1887), 66 Md. 461, 7 Atl. 615; *Sullivan* v. *Erle* (1896), 8 Colo. App. 1, 44 Pac. 948; *Erle* v. *Lane* (1896), 22 Colo. 273, 44 Pac. 591; *State* v. *Nebraska Savings Bank* (1894), 40 Nebr. 342, 58 N. W. 976; *State National Bank* v. *Esterly* (1903), 69 Ohio St. 24, 68 N. E. 582; *Van Winkle* v. *Blackford* (1903), 54 W. Va. 621, 46 S. E. 589; *Jamison* v. *Adler-Goldman Com. Co.* (1894), 59 Ark. 548, 28 S. W. 35; *Philadelphia Warehouse Co.* v. *Anniston Pipe Works* (1894), 106 Ala. 357, 18 So. 43; *Wheat* v. *Dingle* (1889), 32 S. C. 473, 11 S. E. 394, 8 L. R. A. 375.

In the case of *In re Kapu, supra,* the court said: "It is clear that, if after presenting his claim, a secured creditor realizes sufficient from the security which he holds to pay it in full, the debt (and the claim for it)

is extinguished. Why then is it not partially extinguished to the extent of the amount received? The creditor has by his own act wiped out the debt in the one case and in the other has reduced the debt just so much. If the debt can be wholly paid in such a way, why can it not be partially paid? The creditor seems to be asking for a dividend based on something which he has already received. In this case the creditor having exhausted his security, and having a balance due him of $464.05 which is unsecured, claims the right to take more than half of the assets in the hands of the administrator and have its unsecured balance paid to it in full and cut down all other unsecured claims of creditors accordingly. Such a proposition is not only unjust and inequitable, but it would give one unsecured creditor a preference over all the other unsecured creditors. That this unsecured creditor was at the time of filing its claim a secured one is immaterial, because by its own voluntary act it derived all the benefit of the security which it held and put itself, as to the balance due, in the class of unsecured creditors."

It was said by the court in the case of *Sullivan* v. *Erle, supra:* "Where a part only of the creditor's claim is secured by collateral, he is and should be protected in his security. His vigilance and foresight are rewarded to the extent that he exercised it, but no further. Before realizing upon the security, the whole debt is due. Where he has sold the securities and received money, the debt for the payment of which he took the security is paid *pro tanto,*—to that extent extinguished. What remains, and what remained in this case as the debt of the insolvent estate, at the time of the application for a dividend, was the balance remaining unpaid after applying the proceeds of the collateral, and as to that the creditor had only the rights of other creditors —to have it paid *pro rata.* * * * The rule con-

tended for by appellant would work gross injustice by giving to one creditor full payment for the unsecured balance, while an unsecured creditor would get but a fraction."

The basis for the distribution of all insolvent estates should be to place all creditors on an equality, so far as possible, and that none be given a greater preference than the nature of his claim entitles him to.

Evidently Congress believed that the rule we are adopting formed the most equitable basis for distribution, because, under the Bankruptcy Act, a secured creditor is required to deduct any amount he had realized upon his security.

Our own legislature has recognized the equity in such a plan by providing that it shall be the rule in distributing estates voluntarily assigned for the benefit of creditors. §3319 Burns 1914, §2674 R. S. 1881.

If, in order to secure a just distribution, as contended for by appellant, it is necessary to permit the secured creditor to prove the full amount of his claim, notwithstanding he may have received a part thereof from his collateral security, and that to do otherwise would deprive him of his just rights, then a just distribution is denied him where either the insolvent is in bankruptcy, or has made a voluntary assignment.

We are persuaded that the practice followed in the case of bankrupts, and in our state in the case of voluntary assignments, and adhered to by the courts in the cases herein cited, that requires the secured creditor to deduct from his claim the amount he has realized from his security and permits him to share in the general estate on the basis of the unpaid balance, is the more equitable rule.

An additional argument for the adoption of this rule is that it tends to promote uniformity of practice in the

distribution of insolvent estates, since it is followed already in bankruptcy and voluntary assignment cases.

The question as to whether the holder of collateral security, who has not realized from such security, at the time of proving his claim. or at the time of distribution, can be compelled to dispose of such security, or account for its value, is not before us in this case, and we therefore do not attempt to decide that question.

The judgment is affirmed.