[Civil No. 3060. Filed October 6, 1931.]

[3 Pac. (2d) 788.]

In the Matter of the Estate of the PRESCOTT STATE BANK, an Arizona Banking Corporation, Insolvent. MIT SIMMS, Treasurer of the State of Arizona, Appellant, v. JAMES B. BUTTON, Superintendent of Banks and Receiver of the Prescott State Bank, Insolvent, Appellee.

Mr. K. Berry Peterson, Attorney General, and Mr. Arthur T. LaPrade and Mr. Riney B. Salmon, Assistant Attorneys General (Messrs. Baker & Whit-

ney and Mr. Lawrence L. Howe, of Counsel), for Appellant.

Mr. R. B. Westervelt, for Appellee.

ROSS, J.—This proceeding is to determine the equitable rule of distribution of the assets of an insolvent state bank as between secured and unsecured creditors.

The Prescott State Bank being in the course of liquidation through the superintendent of banks, the treasurer of the state of Arizona presented to him the state's claim for $158,093.91 against the insolvent bank, with proof thereof. The bank was a state depository, and, in pursuance of law, had deposited with the state treasurer, as security for any deposits made therein, United States government bonds in the sum of $128,000, and executed a surety bond with the Hartford Accident & Indemnity Company as surety. Some time before June 6, 1926, and before the claim had been approved, the treasurer sold enough of the United States bonds, so held by him as collateral, to realize $113,420.49. This fact coming to the attention of the superintendent of banks, the latter credited said sum upon the state's claim. This left a balance due on the state's claim of $44,673.42, and in the hands of the treasurer as collateral United States bonds in the sum of $14,000. Between June 7, 1926, and December 31, 1928, the receiver paid six dividends totaling 50 per cent. of the balance of $44,673.42, or $22,336.70. The receiver, thereafter concluding that the $14,000 in United States bonds should have been credited on the balance of $44,673.42 and the dividends of 50 per cent. allowed on the balance of $30,006.27, or a dividend of $15,003.13, filed his petition in the superior court of Yavapai county asking for an order directing the treasurer to repay him the difference between the dividends paid and the

dividend he should have paid as he contends, or the sum of $7,333.57.

The reason the treasurer did not convert the $14,000 in United States bonds into cash for application upon the state's claim was that a suit had been brought against him by third parties claiming said bonds, and he was holding them pending the determination of such suit.

Subsequent to the treasurer's receiving the 50 per cent. dividend, the litigation over the title and ownership of the $14,000 in United States bonds was determined in his favor, and he thereupon sold the said bonds realizing therefrom $14,667.15. He has therefore realized on collateral $128,087.64, and in dividends $22,336.70, or, all told, $150,424.34.

After hearing the parties, the court entered an order directing the treasurer to pay back to the receiver the said sum of $7,333.57 as an overpayment of dividends. The treasurer appealed from such order. He claims the right to share in dividends upon the full amount of the state's claim as of the date of the insolvency or receivership, without deduction or offset on account of collateral held by him. He claims this right to receive dividends on the full amount of the state's claim, and in addition thereto of receiving, on account of the state's claim, such proceeds of such collateral as may be realized until the full amount of the state's debt has been paid, following which he admits that he is liable to make delivery to the superintendent of banks of the balance of any collateral, or any excess amount which he may have received from dividends and collateral over the full amount of the state's claim.

The superintendent of banks contends that the treasurer should have applied all the collateral he held upon the state's claim and filed a demand for the balance, and that the dividends from the general

assets of the insolvent should have been paid only on such basis.

The courts are not at all in accord on this question. There are four principal rules that have found judicial favor in this country, and these are stated very plainly and concisely by Mr. Justice BOULDIN, of the Supreme Court of Alabama, in *First National Bank of Birmingham* v. *Green, Superintendent of Banks,* 221 Ala. 201, 128 South. 394, and we take the liberty of quoting *in extenso* such rules, and the citations thereunder, from that opinion:

"In the distribution of the estates of insolvents through trustees of all kinds, the rules for fixing the dividends to be allowed secured and unsecured creditors from the trust fund may be broadly ranged in four classes:

"(1) The rule in bankruptcy, wherein the secured creditor receives dividends only on the excess over the securities held by him. States following this rule in distribution of estates of insolvents through trustees include: Georgia (*Citizens' & Southern Bank* v. *Alexander,* 147 Ga. 74, 92 S. E. 868, L. R. A. 1918B 1021); Massachusetts (*Amory* v. *Francis,* 16 Mass. 308); Kansas (*American National Bank* v. *Branch,* 57 Kan. 27, 45 Pac. 88); Mississippi (*Union & Planters' Bank* v. *Duncan,* 84 Miss. 467, 36 So. 690, 2 Ann. Cas. 272); Washington (*First National Bank* v. *Mansfield State Bank,* 127 Wash. 475, 221 Pac. 595).

"(2) The English chancery rule, wherein the secured creditor gets dividends on the full amount of his claim as of the date the trust fund comes into being, usually the appointment of a receiver or other trustee, and continues to draw dividends on the full amount until his entire debt is collected through securities and dividends, whereupon any remaining fund or equity in collaterals inures to the trust fund. Appellant claims under this rule. This is the federal rule followed in the liquidation of national banks and other insolvent corporations other than in bankruptcy; and also followed in several states, as ap-

pears from the following cases: *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640; *Aldrich* v. *Chemical Nat'l Bank,* 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611; *Chemical Nat'l Bank* v. *Armstrong,* 59 Fed. 372, 28 L. R. A. 231 (C. C. A. 6); *U. S. F. & G. Co.* v. *Centropolis Bank,* 17 Fed. (2d) 913, 53 A. L. R. 295 (C. C. A. 8); *Washington-Alaska Bank* v. *Dexter Horton Nat'l Bank,* 263 Fed. 304 (C. C. A. 9); (Connecticut) *Findlay* v. *Hosmer,* 2 Conn. 350; (Delaware) *Mark* v. *American Brick Co.,* 10 Del. Ch. 58, 84 Atl. 887; (Kentucky) *Hibler* v. *Davis,* 13 Bush (Ky.), 20; (Michigan) *Third Nat. Bank* v. *Haug,* 82 Mich. 607, 47 N. W. 33, 11 L. R. A. 327; (New York) *People* v. *E. Remington & Sons,* 121 N. Y. 328, 24 N. E. 793, 8 L. R. A. 458; (North Carolina) *Merchants' Nat'l Bank* v. *Flippen,* 158 N. C. 334, 74 S. E. 100; (Oregon) *Kellogg* v. *Miller,* 22 Or. 406, 30 Pac. 229, 29 Am. St. Rep. 618; (Pennsylvania) *Patten's Appeal,* 45 Pa. 151, 84 Am. Dec. 479; *Jamison & Co's. Estate,* 163 Pa. 143, 29 Atl. 1001; (Rhode Island) *Allen* v. *Danielson,* 15 R. I. 480, 8 Atl. 705; (West Virigina) *Price* v. *Hosterman Lbr. Co.,* 70 W. Va. 12, 73 S. E. 55; and (Wisconsin) *Harrigan* v. *Gilchrist,* 121 Wis. 127, 99 N. W. 909.

"(3) The Illinois rule, a modification of the above, fixing payment of dividends on the basis of the unpaid amount of the indebtedness on the date the claim is proven and presented. *Levy* v. *Chicago National Bank,* 158 Ill. 88, 42 N. E. 129, 30 L. R. A. 380; in Montana, *State* v. *Yellowstone Valley Bank & Trust Co.,* 75 Mont. 43, 243 Pac. 813; and, in South Carolina, *Wheat* v. *Dingle,* 32 S. C. 473, 11 S. E. 394, 8 L. R. A. 375.

"(4) The Maryland rule, wherein the dividend is based on the amount of the debt as of the date the dividend is declared and as reduced by collections on collaterals before that date. The following states follow this rule: Maryland: *Third National Bank* v. *Lanahan,* 66 Md. 461, 7 Atl. 615. Alabama: *Philadelphia Warehouse Co.* v. *Anniston Pipe Works,* 106 Ala. 357, 18 So. 43, 44. Arkansas: *Jamison* v. *Adler-Goldman Commission Co.,* 59 Ark. 548, 28 S. W. 35. In Colorado: *Erle* v. *Lane,* 22 Colo. 273,

44 Pac. 591. In Iowa: *Doolittle* v. *Smith,* 104 Iowa 403, 73 N. W. 867. In Missouri: *In re McCune,* 76 Mo. 200. In Nebraska: *State* v. *Nebraska Savings Bank,* 40 Neb. 342, 58 N. W. 976. In Ohio: *State Nat'l Bank* v. *Esterly,* 69 Ohio St. 24, 68 N. E. 582. In Indiana: *Union Trust Co.* v. *Fletcher Savings & Trust Co.,* 194 Ind. 314, 142 N. E. 711.''

It is seen, from our statement of the respective contentions of the parties, that appellant advocates the adoption of the chancery and the appellee the bankruptcy rule. By very excellent briefs, counsel have laid before us, if not all the cases, at least all the leading cases bearing upon the question. We will not attempt, except in a very general way, to restate the rules and the reasons given by the different courts for adhering to one rule in preference to another, because to do so would unnecessarily extend the limits of this opinion and, besides, a reference to the cases under each rule will afford the curious ample opportunity for enlightenment.

The Bank Act, chapter 8 of the Revised Code of 1928 (sections 209–272), under which proceedings for the liquidation of insolvent banks are authorized, gives us no key to the solution of the question. It should of course be determined upon equitable principles. An insolvent's estate belongs to his creditors, and when, in accordance with the forms of law, it passes from him, whether it be in a bankruptcy proceeding or an insolvency proceeding or by succession by reason of death, the liquidator takes it and holds it for the creditors.

The chancery rule insists that contracts between the creditor and debtor and the rights flowing therefrom are not different after the debtor becomes insolvent from what they were before; that, though the remedy may be altered from one *in personam* to one *in rem,* otherwise they are the same. It is said the secured creditor, in the absence of positive or

statutory law prior to insolvency, has the absolute right to recover his debt from the general assets of his debtor without recourse to any collateral he may have taken, and that this contract right of recourse to the general assets is a vested right which the accident of insolvency cannot take from him either upon legal or equitable principles. The debt, or personal right, in such cases is the principal thing, the collateral being only security *pro 'tanto* in case the debt is not paid in full by the debtor or his estate.

The Illinois rule, like the chancery rule, recognizes that the debt is the principal thing and permits a secured creditor to keep his security and receive dividends upon the amount of his claim when filed, such amount being determined by deducting therefrom anything he has theretofore realized on the security.

The Maryland rule, likewise, leaves it up to the secured creditor to dispose of or hold his security; but, if he does realize out of his security, his dividends are upon any balance after proper credit.

The bankruptcy rule, on the contrary, disregards the contract status and compels the creditor to deduct the value of his collateral from his claim and file for the balance, or to surrender his collateral to the receiver or trustee and prove his whole debt. It is said by the proponents of this rule that it results in ratable distribution to all the creditors, both secured and unsecured. The supporters of this rule admit it is found in the bankruptcy statutes, but deny that its origin is statutory. They say it was a rule of equity, both in England and this country, long before it found statutory expression, and was of frequent application in the distribution of assets of insolvents. While the results under this rule might accomplish in some cases a more equal distribution of the assets, it ignores the contract right

of the secured creditor and also the fruits of his diligence in exacting security.

The leading case on the question, *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131, 43 L. Ed. 640, 19 Sup. Ct. Rep. 360, goes into it from every angle, exhaustively reviews the authorities, and concludes:

"We repeat that it appears to us that the secured creditor is a creditor to the full amount due him when the insolvency is declared, just as much as the unsecured creditor is, and cannot be subjected to a different rule. And, as the basis on which all creditors are to draw dividends is the amount of their claims at the time of the declaration of insolvency, it necessarily results, for the purpose of fixing that basis, that it is immaterial what collateral any particular creditor may have. The secured creditor cannot be charged with the estimated value of the collateral, or be compelled to exhaust it before enforcing his direct remedies against the debtor, or to surrender it as a condition thereto, though the receiver may redeem or be subrogated as circumstances may require. . . .

"Our conclusion is that the claims of creditors are to be determined as of the date of the declaration of insolvency, irrespective of the question whether particular creditors have security or not. When secured creditors have received payment in full, their right to dividends and their right to retain their securities cease, but collections therefrom are not otherwise material. Insolvency gives unsecured creditors no greater rights than they had before, though, through redemption or subrogation or the realization of a surplus, they may be benefited."

We follow this rule, as most of the courts of this country have, believing that it is basically sound and generally more easily administered.

Recently California has adopted the chancery rule. *In re Farmers' & Merchants' Bank of Imperial (Imperial Irrigation District* v. *Wood),* (Cal. App.) 292 Pac. 665 (213 Cal. 33, 1 Pac. (2d) 422).

The four rules are exhaustively treated in a note to *Citizens' & Southern Bank* v. *Alexander,* in L. R. A. 1918B, at page 1024 (147 Ga. 74, 92 S. E. 868).

From the statement of the facts of this case, it is obvious that none of the above rules can be wholly followed here because of the course of settlement adopted by the superintendent of banks and acquiesced in by the treasurer. The dividends should have been paid on the state's whole debt. However, the treasurer without objection accepted the dividends on the balance after deducting $113,420.49 realized on collateral, and we think this settlement should be allowed to stand. In other words, while the treasurer did not receive as large dividends as he was entitled to receive, having accepted the lesser amount, he should be required to abide by it, because otherwise distribution to other creditors would be disturbed.

The order directing the treasurer to pay back to the superintendent of banks the sum of $7,333.57 was error, and is therefore reversed.

Any further dividends should be on the basis of the state's full claim as filed.

McALISTER, C. J., and LOCKWOOD, J., concur.