[Civ. No. 6. Fourth Appellate District.—October 17, 1929.]

GEORGE F. KLEVER, Respondent, v. C. M. HEWINS et al., Appellants.

Grant Holcomb for Appellants.

Edgar G. Wenzlaff for Respondent.

BARNARD, J.—Defendants were engaged in manufacturing, rebuilding and retreading automobile tires at Colton, California, with various branch stores. The plaintiff paid to the defendants $1500 in cash for the privilege of becoming the manager of their branch store at Santa Ana, California. He entered upon his duties as such branch manager, under a written agreement which provided, among other things, that defendants would furnish and pay the rental for a storeroom, and maintain a stock of goods. And that, for a fixed salary, plaintiff would faithfully manage said store and account to defendant, at any time, for all money or property then in his possession.

The agreement also contained the following: "(b) Said Second Party shall have the right to terminate this agreement ·by giving unto the said First Parties a ninety-days notice of intention to cancel said agreement and upon the expiration of said ninety days, the said First Parties, the said Hewins Rubber Company, shall pay to the Second Party the sum of Fifteen Hundred ($1500,00) Dollars without interest, less, however, any money due or owing from the Second Party to the First Parties, and thereupon said agreement shall finally cease and determine, and be of no force and effect; provided, however, that if the said Hewins

Rubber Company shall not upon the expiration of said ninety days notice so given by the Second Party pay said sum of Fifteen Hundred ($1500.00) Dollars as herein in paragraph lettered (b) provided, then the said Second Party shall have a lien upon any and all goods and equipment then in said branch store which lien shall exist until an accounting shall have been had between the parties hereto, and the exact amount due the Second Party shall have been determined or agreed upon, and thereupon said Second Party shall have the right to take equivalent in value from said stock or equipment so found to be due, provided said First Party shall not theretofore pay such amount found due. The right to take and remove said goods and equipment hereinabove provided for in this paragraph shall not accrue, however, until said account has been settled either by agreement or proper action of a proper court.''

On March 22, 1926, plaintiff gave to defendants a ninety-day notice of intention to terminate said contract, as therein provided. The evidence shows that after the expiration of the ninety days, and while waiting for an accounting which was promised from time to time by the defendants, the plaintiff continued to sell goods, and all proceeds were deposited in the bank to the account of the defendants until July 6, 1926. On July 1, 1926, defendants wired to plaintiff, ''You are hereby authorized to take ownership of Santa Ana store subject to selling franchise agreement.''

On the same day they wrote their landlord at Santa Ana that they had sold the store to plaintiff and would no longer be responsible for rent, but that they would pay the back rent in a few days. At this time the rent was two months in arrears. The court found, upon sufficient evidence, that the plaintiff at no time became the owner of the store.

Plaintiff had received written instructions to return to defendants all tires in stock not fit for sale, and on July 1, 1926, he returned fifty-two tires which he considered unfit for sale. On July 9, 1926, he sold and delivered the entire remaining stock of tires and tubes to one man, receiving for them $797.25, which amount he retained. These goods were sold at the regular wholesale prices, for which he was authorized to sell. On July 12, 1926, the landlord, because of the nonpayment of the rent, locked the doors and took possession of the store. And on the same date a deputy

assessor posted a notice of sale for personal property taxes, by virtue of which the remaining equipment of the store was later sold for taxes.

Plaintiff brought this action for the balance of the $1500 above mentioned, less the amounts already held by him. In addition to the denials in their answer, defendants set up the affirmative defense that the stock of goods and fixtures in plaintiff's possession were worth more than $1500, and that plaintiff, in violation of the agreement, "took and removed" the same, and that he had failed to account for the proceeds of sales of merchandise. And an accounting was prayed for. The trial court proceeded on the theory that the action included an accounting, and this appeal is from a judgment in favor of the plaintiff for $682.15.

It is first urged, as a ground for reversal, that respondent violated his agreement to faithfully manage the business, by failing to notify appellants of the impending tax sale, and thus caused the fixtures to be sold for less than their value. Assuming that respondent owed such a duty under the circumstances outlined, no more than a conflict in the evidence is raised by this point. Respondent testified that he did notify appellants; a tax official testified that at least three notices had been sent to them; and appellants' bookkeeper admitted he had received a tax statement prior to July 1st.

As a second ground for reversal, it is contended that under section (b) of the contract, as above quoted, respondent's only remedy was "to take equivalent in value from said stock and equipment," which right could only be exercised *after* an accounting had been had, and that it was therefore not in the power of the court to enter a money judgment. In this connection it is urged that at the expiration of the ninety-day period, respondent had sufficient goods on hand to more than compensate himself, but that he violated the agreement by prematurely taking and removing the stock before an accounting was had, and by returning a portion of the stock to appellants.

Examining the portion of the contract involved, it is clear that appellants agreed, after notice given, to repay to respondent the sum of $1500, less any existing offset. It is provided that in the event the amount due is not paid as agreed, then respondent shall have, pending an account-

ing, a lien on all goods in the store. It is further agreed that after such accounting, whether by agreement or by court action, the respondent shall have the right to take and remove sufficient of the stock to cover the amount due.

It will be noted that the primary agreement and obligation was to pay a sum of money, less existing offsets. The further lien and right to take specific goods was an additional right, by way of security, under certain circumstances. Meanwhile this lien constituted no more than a pledge. ■ Even a pledgee may recover the amount of his debt without foreclosing the pledge. (*Commercial Sav. Bank* v. *Hornberger,* 140 Cal. 16 [73 Pac. 625].) Respondent was not limited to proceeding against the property on which he had a lien. And the evidence does not show that he acted on his additional right to take specific goods. It does show that after the expiration of the required notice, respondent, while attempting to get an accounting with appellants, continued to sell goods, with their approval; that all receipts until the last sale were deposited to their account in the bank; that certain of the tires were returned in accordance with written instructions; and that the final sale of tires was made at prices fixed by appellants, and at which respondent was authorized to sell. No goods were taken or removed in pursuance of the lien right given, either prematurely, as argued by appellants, or at all. The only departure from the usual procedure was that the last payment for tires was retained by respondent. This was not an attempt to exercise the lien right, but was simply an item for which he must and did account. The trial court has ascertained the amount due, upon sufficient evidence, and the agreement of the parties and the facts amply support the judgment. The judgment is therefore affirmed.

Sloane, P. J., and Marks, J., concurred.