[Civ. No. 8503. First Appellate District, Division One.—April 14, 1933.]

In the Matter of BANK OF OAKLEY (a Banking Corporation) in Liquidation. CONTRA COSTA COUNTY, Appellant, v. EDWARD RAINEY, Superintendent of Banks, etc., Respondent.

James F. Hoey, District Attorney, for Appellant.

Louis H. Burke, Burke, Hickson & Burke and Daniel G. Marshall, as *Amici Curiae* in Support of Appellant.

Sullivan, Roche, Johnson & Barry, for Respondent.

JAMISON, J., *pro tem.*—The Bank of Oakley is a commercial and savings bank organized and existing under the laws of the state of California. On December 19, 1930, the Superintendent of Banks took possession of the Bank of Oakley for the purpose of liquidating its affairs in accordance with the provisions of section 136 of the Bank Act of this state. (Deering's Gen. Laws, 1931, Act 652.) At that time the County of Contra Costa had on deposit with said bank the sum of $12,240.63 in the commercial department and the sum of $12,280.62 in the savings department. Each of these deposits was secured by the pledge of certain bonds in accordance with the provisions of the County and Municipal Deposit Act (Stats. 1927, p. 1388, as amended, Stats. 1931, p. 2223.) The County of Contra Costa presented and filed, in the form prescribed by law, claims covering both deposits. These claims were allowed and approved by the Superintendent of Banks as secured claims against the said commercial and savings departments, but the Treasurer of said county was notified by the said Superintendent of Banks that the said claims were allowed without right to participate in dividends declared until after the exhaustion of the security, and that thereafter dividends on said claims

would be paid only after the security was exhausted, and then only on the amount of the deficiency.

On May 15, 1931, after the claims of said county had been presented and allowed as aforesaid, a dividend of twenty-five per cent was declared and allowed upon all general claims against each of the commercial and savings departments of said bank, and on December 1, 1931, a dividend of twenty per cent on all general claims was declared against the commercial department of said bank and another dividend of fifteen per cent was declared upon all general claims against the said savings department.

The said superintendent refused to make payment of dividends to said county on its claims for said deposits until the said securities were exhausted; and then only on the deficient sum which remained after exhausting said securities. Upon being excluded from participating in said dividends the said county filed a petition asking for an order of the court directing the said superintendent to pay dividends upon the full amount of its secured claims in the same amounts paid to the general creditors. After a hearing upon an agreed statement of facts the court made and entered an order denying the petition, and rendered judgment thereon against the said county. From this order and judgment the said county has appealed.

■ The question presented for decision on this appeal is what rule shall be applied by the Superintendent of Banks, in determining the dividends that shall be allowed creditors of the closed bank who are secured by pledged bonds. There are two rules by which the federal and state courts have been guided in the determination of this question. One of these rules is known as the "bankruptcy rule". Under this rule a creditor of a closed bank having a secured claim must first exhaust his security and credit the proceeds upon his claim, or credit the value of his security thereon and prove for the balance, or he may surrender his security and prove for the full amount of his debt. The other is called the "chancery" or "equity rule". This rule permits the creditor to prove for and receive dividends upon the full amount of his claim regardless of the collateral held by him and regardless of any sums received by him from the collateral after the transfer of the assets of the insolvent debtor, provided, however, such secured creditor shall not receive more than the full sum due him.

While this question has been passed upon by decisions in the federal courts and in many of the state courts, some of them adopting the bankruptcy rule and others the chancery rule, it has never been passed upon by the Supreme Court of this state. In the case of *In re Farmers & Merchants Bank,* the Fourth Appellate District (63 Cal. App. Dec. 653 [292 Pac. 665]) held that the equity rule should apply. However, the Supreme Court granted a rehearing and in passing thereon the court held that the order from which the appeal was taken was not an appealable order, and so holding declined to pass upon the question whether or not the chancery rule or the bankruptcy rule should prevail in this state. (*In re Farmers & Merchants Bank,* 213 Cal. 33 [1 Pac. (2d) 422].) In its contention that the equity rule be followed in this state, appellant in its opening brief has called our attention to the decisions of the Supreme Court of the United States, and to those of some sixteen states upholding this rule, while on the other hand respondent in his brief has cited decisions from fourteen or fifteen states holding that the bankruptcy rule should be followed. As was remarked by the District Court of Appeal in the case of *In re Farmers & Merchants Bank, supra:* "No great good could come from a review or analysis of the various decisions cited. In some jurisdictions the courts are aided in their conclusions by the statutes they are construing." In each of these decisions able and learned jurists have set forth their several reasons for their conclusions for upholding one or the other of these rules and the conclusions they have reached in doing this are based upon principles more or less convincing. Under these conditions it is difficult to determine which rule carries the weight of authority. The California Bank Act furnishes no assistance in determining this question. However, the bonds were pledged to appellant to secure the debts owing to it by the said bank. ■ Every contract by which the possession of personal property is transferred as security only is deemed a pledge. (Civ. Code, sec. 2987.) It is the well-established law that the pledgee may sue to recover the debt without first exhausting the subject of the pledge. (*Ehrlich* v. *Ewald,* 66 Cal. 97 [4 Pac. (2d) 1062]; *Savings Bank of St. Helena* v. *Middlekauff,* 113 Cal. 463 [45 Pac. 840]; *Klever* v. *Hewins,* 101 Cal. App. 295 [281 Pac. 695].) And as a pledge is security

for the payment of the debt, the pledgee has the right to retain possession of the property pledged until his debt is paid. (*Sonoma Valley Bank* v. *Hill,* 59 Cal. 107; *Spect* v. *Spect,* 88 Cal. 437 [26 Pac. 203, 22 Am. St. Rep. 314, 13 L. R. A. 137]; *Commercial Sav. Bank* v. *Hornberger,* 140 Cal. 16 [73 Pac. 625].)

We approve the following language used by the District Court of Appeal in its opinion in the case of *In re Farmers & Merchants Bank, supra:* "It would therefore seem clear that in California a pledge is given and received as collateral security for the payment of the entire debt and not any divisible part or portion thereof. It is as much security for the first dollar of the obligation as it is the last dollar of the debt which may remain unpaid after the application of credits derived from other property of the debtor. We cannot see how the pledge holder can be compelled to treat the pledge as a security for a portion of his debt only in the absence of a statute which might be construed as a part of the contract, compelling him so to do. Also in the absence of any mandate of the law changing the general rule, we cannot see how the fact of the debtor being a bank, the affairs of which are being administered by the Superintendent of Banks can change the general rule. The rights and obligations of the parties to a pledge are fixed by the contract under the provisions of law, and the Bank Act being silent upon the subject, the rights and obligations of the parties must remain the same after the commissioner of banks entered the transaction as they were before that event."

It seems clear that the application of the bankruptcy rule would invade the vested rights of appellant which it acquired when the contracts for the deposits were executed, for by these contracts appellant was given the right to retain the pledged bonds and participate equally with the other creditors of the bank in the funds realized from the liquidation of its unpledged assets, and in the event that the said assets were insufficient to satisfy the debt then appellant had the right to resort to the pledged bonds to make up the deficiency.

This was so held in the case of *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131 [19 Sup. Ct. 360, 363, 43

L. Ed. 640], so frequently quoted and approved as authority in the later decisions upon this question. In the course of that opinion the court, speaking of the chancery rule, said: " . . . as the trust created by the transfer of the assets by operation of law or otherwise, is a trust for all creditors, no creditor can equitably be compelled to surrender any other vested right he has in the assets of his debtor in order to obtain his vested right under the trust". Further along the court said: "The creditor can sue, recover judgment, and collect from the debtor's general property, and apply the proceeds of the collateral to any balance which may remain. Insolvency proceedings shift the creditor's remedy to the interest in the assets. . . . And while the unsecured creditors are entitled to be substituted as far as possible to the rights of secured creditors, the latter are entitled to retain their securities until the indebtedness due them is extinguished." (*Harrigan* v. *Gilchrist*, 121 Wis. 127 [99 N. W. 909, 975]; *Kellogg* v. *Miller*, 22 Or. 406 [30 Pac. 229, 29 Am. St. Rep. 618]; *In re Prescott State Bank's Estate*, 39 Ariz. 32 [3 Pac. (2d) 788, 790].)

In *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. 372 [28 L. R. A. 231], Judge Taft delivering the opinion said: "He [the creditor] had two securities for the payment of his debt, one of which he held in common with all the creditors, the other of which he had obtained by lawful contract from his debtor." In this same case Judge Taft also said, referring to *Amory* v. *Francis*, 16 Mass. 308: "With much deference to the great jurist [Chief Justice Parker] who advanced this argument [in favor of the bankruptcy rule], we think that it quite incorrectly states the effect of the contract of pledge, which is that the collateral shall be security for the whole debt, and every part of it, and therefore is as applicable to any balance which remains after payments from other sources as to the original amount due."

Respondent calls our attention to the County and Municipal Deposit Act (Stats. 1927, p. 1388) under which these deposits were made, which provides that " . . . in the event that any said bank or banks of deposit shall fail to pay such deposits, or any part thereof, on the demand of the treasurer then it shall be the duty of such treasurer to forthwith recover upon or convert said notes or bonds into money and to disburse the same according to law".

(Sec. 5.) Under the equity rule this provision can be of no avail to respondent, because that rule provides that the creditor holding collateral security shall receive dividends upon the full amount of his claim regardless of any sums received by him from the collateral after the transfer of the assets of the insolvent debtor. (*Merrill* v. *National Bank of Jacksonville, supra; Aldrich* v. *Chemical National Bank,* 176 U. S. 618 [20 Sup. Ct. 498, 44 L. Ed. 611].) In this former case the court said: "Our conclusion is that the claims of creditors are to be determined as of the date of the declaration of insolvency, irrespective of the question whether particular creditors have security or not. When secured creditors have received payment in full, their right to dividends, and their right to retain their securities cease, but collections therefrom are not otherwise material." In the instant case there is nothing in the record indicating that appellant's treasurer had ever made any demand upon the said bank for the payment of said deposits. Until such demand was made and thereupon the bank failed to pay such deposits, no authority to recover upon or convert·said bonds was vested in said treasurer.

Respondent contends that under the provisions of sections 2899 and 3433 of the Civil Code appellant should first exhaust its security and then participate equally with the other creditors in the general assets of the bank for the balance due it. It is admitted that the market value of the bonds is far less than their par value and that said bonds are insufficient to liquidate appellant's claims. Again we quote from the opinion of the District Court of Appeal in the case of *In re Farmers & Merchants Bank, supra,* as a complete answer to respondent's said contention, as follows: "The two code sections [2899 and 3433, Civil Code] cited state the rule for marshaling assets in force in this jurisdiction. Neither requires the prior creditor to first resort to the fund or property upon which he has the sole lien if such action would impair his right to the complete satisfaction of his debt. The marshaling of assets is an equitable doctrine which cannot be invoked by one creditor to defeat part of the demand of a prior lienholder. This rule is clearly stated in 16 California Jurisprudence, page 950, as follows: 'A lien claimant may invoke the rule of marshaling assets only when it will benefit him without injur-

ing others. The right to marshal is a mere equity which may never be invoked when its operation will accomplish inequity. Marshaling will not be enforced, for example, where the holder of the senior security will be prejudiced by it.' (*Kent* v. *Williams,* 114 Cal. 537 [46 Pac. 462]; *Harrington* v. *Taylor,* 176 Cal. 802 [169 Pac. 690].) If the District were required to exhaust its security and then participate equally with the other creditors in the other assets of the bank, its demand for which the pledge was given would not be paid in full.''

We are of the opinion that the equity or chancery rule should be applied in this case, and so concluding we consider it unnecessary to lengthen this opinion by the discussion of other matters raised by appellant.

The order and judgment thereon dismissing the order to show cause are reversed, with directions to the trial court to grant the petition of appellant and ordering respondent to pay it twenty-five per cent on each of its claims against the said departments of said bank, and twenty per cent additional on its claims against the commercial department thereof, and fifteen per cent additional upon its claims against the savings department of said bank.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 13, 1933.

Langdon, J., dissented.